(No. 77695.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID SMITH, Appellant.

*Opinion filed March 20, 1997.—Rehearing denied June 2, 1997.*

Rita A. Fry, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Barbara L. Jones and Robyn Berman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, David Smith, was convicted following a jury trial in the Cook County circuit court of first degree murder, aggravated criminal sexual assault and home invasion arising from the March 17, 1987, stabbing death of Lisa Ferguson. At a separate sentencing hear-

ing, the same jury found defendant eligible for the death penalty and found that there were no factors in mitigation sufficient to preclude imposition of the death sentence. Accordingly, the trial court sentenced defendant to death for the murder conviction and to concurrent terms of 30 years each for the aggravated criminal sexual assault and home invasion convictions.

On review, this court affirmed defendant's convictions, but found that the trial court's refusal to "life-qualify" the jury amounted to a violation of defendant's due process rights requiring vacation of the death sentence and a remand of the cause for a new sentencing hearing. *People v. Smith*, 152 Ill. 2d 229 (1992). The evidence presented at defendant's trial and original sentencing hearing is set forth in that opinion in detail. Therefore, only the facts necessary for understanding and adjudicating the issues in the present appeal will be discussed.

On remand, the trial court, after a new sentencing hearing, reimposed the death penalty for defendant's murder conviction. The sentence of death has been stayed pending direct review by this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a). Defendant argues on appeal that numerous errors committed during both the eligibility and penalty phases of his capital resentencing deprived him of the right to a fair sentencing hearing. We first address those he cites that are associated with the eligibility phase.

Defendant initially contends that his waiver of a jury for purposes of sentencing was not knowing, intelligent or voluntary because he was not specifically advised that he was entitled to have a jury determine his eligibility for the death penalty. The record shows that, prior to the sentencing hearing, the trial court admonished defendant as follows:

"THE COURT: *** [Defendant], you understand that

you have a right to have a jury make a determination as to the sentencing in this case.

Do you understand that?

[DEFENDANT]: Yes, sir.

Q. And you may, if you so choose, give that \*\*\* right up and have a judge, in this case that would be myself [*sic*], make that determination.

Do you understand that?

A. Yes, sir.

Q. In other words, that would be the difference between having a jury of twelve people hearing the facts of this case, hearing these matters, and then deciding all of them, twelve to zero, whether—with regards [*sic*] to the death penalty, whether that sentence should be imposed.

Do you understand that?

A. Yes, sir, I do.

Q. That right cannot be taken away from you. You must knowingly waive that right.

Do you understand that?

A. Yes, sir.

Q. Do you wish to have a jury make that determination, or do you wish to have a judge decide?

A. I wish at this time to have the judge decide."

Defendant also executed a written waiver of jury sentencing.

Defendant argues that despite these oral and written precautions, his waiver of his right to a jury was not knowing, intelligent or voluntary because the trial court did not admonish him as this court recommended in *People v. Albanese*, 104 Ill. 2d 504 (1984). We disagree. It is true that the *Albanese* court stated:

"[W]e suggest to trial judges that it would be preferable if, before accepting a jury waiver at a capital sentencing hearing, they would inform defendants that a sentencing jury would have to unanimously decide that the State has proved beyond a reasonable doubt the existence of a statutory aggravating factor and that there are not sufficient mitigating factors established to preclude the death sentence." *Albanese*, 104 Ill. 2d at 536.

However, it is sufficient for a valid jury waiver that the

trial court explain to the defendant that he is waiving his right to have a jury consider the capital sentencing issues and that the sentencing decision would, therefore, be made by the court alone. *People v. Haynes*, 174 Ill. 2d 204, 252 (1996); *People v. Ramey*, 152 Ill. 2d 41, 59 (1992).

Although it is "preferable" for the court to admonish a defendant regarding the specific rights he is waiving at each stage of capital sentencing, this court ultimately held in *Albanese* that the sixth amendment requires no precise formula for determining whether a waiver has been knowingly and intelligently made, and that each case will turn on its own facts and circumstances. *Albanese*, 104 Ill. 2d at 535-36; see also *People v. Strickland*, 154 Ill. 2d 489, 517 (1992) (there is no fixed formula that must be recited by the court prior to receiving a defendant's valid jury waiver at a capital sentencing hearing). Here, the record shows the trial court admonished defendant that he had a right to have a jury make the sentencing determination, that, after hearing "these matters," the jurors would have to decide unanimously whether the death sentence should be imposed, and that if defendant chose to give up that right, a judge would make the sentencing determination. Defendant stated that he understood the consequences of his waiver. Additionally, we find it significant that defendant had originally been convicted of murder and sentenced to death by a jury, and thus was familiar with the jury's function in a capital sentencing hearing. See *Albanese*, 104 Ill. 2d at 536. Therefore, we are satisfied that the facts and circumstances of this case demonstrate that defendant's waiver was knowing, intelligent and voluntary.

Defendant next argues that he was denied effective assistance of counsel at his sentencing hearing because defense counsel misunderstood the eligibility issue and accordingly did not contest defendant's eligibility for

the death penalty. In a related argument, defendant contends that the trial court improperly found him eligible for the death penalty where the State did not prove and the court did not find the element of intent as required under section 9—1(b)(6) of the Criminal Code of 1961 (720 ILCS 5/9—1(b)(6) (West 1994)).

At resentencing, the State asked the court to take judicial notice that the jury had convicted defendant of murder, aggravated criminal sexual assault and home invasion, and that, given his birth date of June 26, 1963, defendant was over the age of 18 at the time of the offenses. The State requested that "[b]ased on those two findings," defendant be found eligible for the death penalty. The following colloquy then occurred:

> "THE COURT: Do you have any objection to me taking judicial notice of those facts?
> [DEFENSE COUNSEL]: Judge, my understanding of the opinion is that the sentencing—or the eligibility is not an issue. It's merely the sentencing."

The court then took judicial notice of those facts and found, "pursuant to the provisions of the statutes, [defendant] is eligible for the death penalty."

We agree with defendant that his counsel evidently believed, incorrectly, that the resentencing ordered by this court based upon *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), was limited to the second phase of the proceeding. In *People v. Johnson*, 159 Ill. 2d 97, 134-35 (1994), we held that there was no distinction between the two stages of sentencing for purposes of the *Morgan* doctrine, because "the jury involved in any aspect of the death sentencing procedure must be fair and impartial." Thus, on remand, defendant clearly had a right to both stages of the hearing. However, we find that under the circumstances present herein, counsel's mistake as to the law did not deny defendant a fair sentencing hearing, because the trial court properly determined defendant's eligibility

and the outcome of the hearing would not have differed had defense counsel contested the point.

"For the purposes of imposing the death sentence, it is incumbent upon the sentencer to determine whether an aggravating factor exists." *People v. Johnson*, 149 Ill. 2d 118, 156 (1992). Section 9—1(b)(6) sets forth the elements of the statutory aggravating factor of murder in the course of another felony, and includes the requirement that the defendant acted with the intent to kill or with the knowledge that his acts created a strong probability of death or great bodily harm. 720 ILCS 5/9—1(b)(6)(b) (West 1994); *Johnson*, 149 Ill. 2d at 156. Defendant argues, as did the defendant in *Johnson*, 149 Ill. 2d at 156, that the trial court failed to make any finding that he, in performing the acts which caused the victim's death, acted with the necessary intent. Specifically, defendant argues that proof that he was convicted of murder, aggravated criminal sexual assault and home invasion and that he was over 18 at the time of the murder is insufficient to establish his eligibility for the death penalty. However, defendant was indicted and proceeded to trial on, *inter alia*, two counts of first degree murder alleging the mental states of intent or knowledge (Ill. Rev. Stat. 1987, pars. 9—1(a)(1), (a)(2)), and the jury returned a general verdict of guilty on the murder charge. See *People v. Thompkins*, 121 Ill. 2d 401 (1988) (where an indictment contains several counts arising out of a single transaction and a general verdict is returned the effect is that the defendant is guilty as charged in each count). In *Johnson*, under strikingly similar facts, we reasoned:

> "The jury was charged with instructions which included intentional murder, and a general verdict was returned. That raised the presumption that the jury found the defendant guilty of intentional murder. During the sentencing hearing, the trial judge took judicial notice of the jury's verdict. Since the verdict encompassed the neces-

sary finding of intent, there was no omission on the part of the trial judge, and defendant's argument must fail." *Johnson*, 149 Ill. 2d at 157.

We believe *Johnson* to be controlling here, and hold that the trial court made the requisite finding of intent under the statute, where the court took judicial notice of the jury's verdict.

Defendant cites *People v. Ramey*, 151 Ill. 2d 498, 545-50 (1992), wherein this court found that a jury's general verdict would not support imposition of the death penalty because use of the presumption that the jury found the defendant intentionally murdered the victim would deny the defendant his right to have his eligibility for the death penalty decided by a trial court or jury. Defendant's reliance on *Ramey* is misplaced. In *Ramey*, the instructions given the jury at the first stage of sentencing failed to specify that there must be a finding that the defendant acted with the intent required under section 9—1(b)(6)(b). Thus, this court declined to find that the defendant's eligibility had been established because, unlike the case before us, a statutory finding of intent was not made at sentencing. *Ramey*, 151 Ill. 2d at 545-46.

Having established that the trial court properly determined defendant's eligibility, we examine whether defense counsel's failure to contest that finding constituted ineffective assistance. A defendant alleging a violation of his sixth amendment right to effective assistance of counsel must generally meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and recognized by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, the defendant must show that: (1) his counsel's performance fell below the objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Albanese*, 104 Ill. 2d at 527.

As an initial matter, defendant contends that because his counsel wholly failed to subject the prosecution's case to meaningful adversarial testing at the eligibility stage of sentencing, ineffective assistance of counsel can be presumed without application of the *Strickland* test. See *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). Defendant argues that counsel's concession of his eligibility for the death penalty is equivalent to the concession of a defendant's guilt that this court held constituted ineffective assistance of counsel in *People v. Hattery*, 109 Ill. 2d 449 (1985). However, the facts in the instant case are clearly distinguishable from those in *Hattery*. The concession by counsel in this case occurred at the sentencing hearing, not during the opening arguments at trial. "Thus, unlike *Hattery*, the question of defendant's guilt or innocence in this case had previously been 'presented to the jury as an adversarial issue.' " *People v. Holman*, 132 Ill. 2d 128, 160 (1989), quoting *Hattery*, 109 Ill. 2d at 464. Rather, here, as in *Holman*, counsel merely conceded the undisputed fact of defendant's murder and felony convictions. We therefore reject defendant's claim that his counsel's concession of eligibility constituted ineffective assistance under *Hattery*. See *Holman*, 132 Ill. 2d at 160-61.

We similarly find that counsel's mistaken belief that eligibility was "not an issue" did not constitute ineffective assistance under *Strickland*. "An error by counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 696, 104 S. Ct. at 2066. Defendant contends that his counsel was ineffective because, at the eligibility stage, he failed to argue that defendant did not have a culpable mental state, yet later presented evidence that defendant was under the influence of alcohol and narcotics and may have experienced a transient psychotic episode at the time of the murder. In *People v. Shatner*, 174 Ill. 2d 133 (1996), we recently rejected this argument raised by a defendant whose counsel, under similar circumstances, declined to make an opening statement in the eligibility phase, presented no evidence, and made no argument against a finding of eligibility. There, the sentencing court, after taking judicial notice of its presence when the jury returned a general verdict of guilty to the charges of first degree murder, armed robbery and arson, ruled that the defendant was eligible for the death penalty under section 9—1(b)(6). We held that defense counsel's actions were not ineffective, because the defendant could not show, under the second prong of *Strickland*, that there was a reasonable likelihood that, but for counsel's inaction, the result of the eligibility proceeding would have been different. *Shatner*, 174 Ill. 2d at 150.

> "*Johnson* undermines defendant's claim that, had his attorney challenged his eligibility, the sentencing judge would have found that he lacked the requisite intent under the aggravating felony murder factor and was not eligible for the death penalty. \*\*\* Since the jury verdicts encompassed the necessary finding of intent, and since the trial judge took judicial notice of these verdicts, his conclusion that defendant acted with the requisite intent to be eligible for the death penalty cannot be assailed." *Shatner*, 174 Ill. 2d at 150-51.

Moreover, we note that the trial court herein heard the evidence defendant presented at trial and sentenc-

ing concerning his alcohol and narcotics ingestion and "psychotic episode" on the night of the murder, and rejected the notion that defendant's mental condition had any effect on his criminal conduct. Prior to handing down defendant's sentence, the court stated: "There is as we referred to mitigation offered. The question is, is it sufficient. Mr. Smith, you lost control. You lost control not because in our mind of any mental condition, not because of any disease. You just went out of control." Thus, as we stated in *Shatner*:

"From these comments, it is apparent that defendant's contention that his eligibility hearing might have been different had his counsel contested eligibility is speculative at best. Defendant thus cannot satisfy the prejudice prong of the *Strickland* test, and his claim of ineffective assistance of counsel at the eligibility phase must be rejected." *Shatner*, 174 Ill. 2d at 151.

We next consider defendant's assertions of error with regard to the second phase of his capital sentencing hearing. Defendant first argues that he is entitled to a new sentencing hearing because the record does not reflect that he waived his right to testify. The State responds that defendant has waived appellate review of this issue and, alternatively, that defendant's contention is without merit. We agree with both of the State's arguments.

Section 9—1(e) of the Criminal Code of 1961 allows the defendant to testify at his capital sentencing hearing. 720 ILCS 5/9—1(e) (West 1994); *People v. Gaines*, 88 Ill. 2d 342, 376 (1981). However, in the case at bar, the record shows that at no time during the hearing did defendant indicate a desire to testify in his own behalf. Nor did defendant raise this matter in his post-sentencing motion. Thus, defendant has waived this issue for purposes of appellate review. *People v. Enoch*, 122 Ill. 2d 176 (1988). Notwithstanding defendant's waiver, we choose to address the merits of this issue.

See *People v. Shelton*, 252 Ill. App. 3d 193, 200 (1993); *People v. Raso*, 234 Ill. App. 3d 1099, 1100-01 (1992).

Defendant urges that this court adopt the holding of a small minority of jurisdictions which have required a defendant's waiver of the right to testify to be on the record. See *Tachibana v. State*, 79 Haw. 226, 900 P.2d 1293 (1995); Annotation, *Necessity That Waiver of Accused's Right to Testify in Own Behalf Be on the Record*, 90 A.L.R.4th 586 (1991). Illinois courts have consistently found, however, that when a defendant contends on appeal that he was precluded from testifying at trial, his conviction cannot be reversed on the basis that he was prevented from exercising that right unless he contemporaneously asserted his right to testify by informing the trial court that he wished to do so. See *People v. Thompkins*, 161 Ill. 2d 148, 177-78 (1994); *People v. Brown*, 54 Ill. 2d 21, 24 (1973); *Shelton*, 252 Ill. App. 3d at 201; *Raso*, 234 Ill. App. 3d at 1100; *People v. Knox*, 58 Ill. App. 3d 761, 767-68 (1978). Indeed, a vast majority of the states considering this question have held that a defendant's waiver of his right to testify is presumed if, as in the present case, he fails to testify or notify the court of his desire to do so. See *Shelton*, 252 Ill. App. 3d at 201, citing *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991).

Additionally, a majority of jurisdictions, and our own appellate court, have found that a trial court has no duty to advise a defendant, represented by counsel, of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. *Shelton*, 252 Ill. App. 3d at 201; *Raso*, 234 Ill. App. 3d at 1102; see also *Martinez*, 883 F.2d at 760. Although such procedures are required to establish a valid jury waiver (725 ILCS 5/103—6 (West 1994)) or a voluntary guilty plea (725 ILCS 5/113—4(c) (West 1994); 134 Ill. 2d Rs. 402,

605), there is no need for a comparable requirement that the trial court set of record defendant's decision on this matter. As the *Martinez* court stated:

"At least seven reasons have been given for this conclusion: First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. [Citation.] Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. [Citation.] Third, by advising the defendant of his right *to* testify, the court could influence the defendant to waive his right *not to* testify, 'thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right.' [Citation.] Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the Sixth Amendment. [Citation.] Fifth, there is danger that the judge's admonition would introduce error into the trial. [Citation.] Sixth, it is hard to say when the judge should appropriately advise the defendant—the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. [Citation.] Seventh, the judge should not interfere with defense strategy. [Citation.]" (Emphasis in original.) *Martinez*, 883 F.2d at 760.

For all these reasons, we join the majority of states in concluding that the trial court is not required to advise a defendant of his right to testify, to inquire whether he knowingly and intelligently waived that right, or to set of record defendant's decision on this matter.

Here, defendant does not assert that his counsel was ineffective for advising him to refrain from testifying at sentencing, nor does he indicate of what his testimony would have consisted. We recognize that the decision whether to take the witness stand and testify in one's own behalf ultimately belongs to the defendant (*Thompkins*, 161 Ill. 2d at 177; *Brown*, 54 Ill. 2d at 23), but it should be made with the advice of counsel (*Brown*, 54 Ill. 2d at 23-24; *Raso*, 234 Ill. App. 3d at 1101-02). Thus, in the instant case, defendant's decision not to testify

must be viewed as strategy with which he agreed. See *Thompkins*, 161 Ill. 2d at 177; *Raso*, 234 Ill. App. 3d at 1101. Accordingly, we conclude that defendant waived his right to testify because he did not contemporaneously assert his right to do so and that the trial court did not err by failing to advise defendant of his right to testify at sentencing or by failing to require that defendant's waiver of the right be incorporated in the record. See *Shelton*, 252 Ill. App. 3d at 202; *Raso*, 234 Ill. App. 3d at 1101-02.[1]

Defendant next contends that the trial court erred in relying on its notes from the original sentencing hearing without informing defense counsel. Richard Rizzo, a Cook County sheriff's office employee assigned to the Cook County jail, testified for the State in aggravation at both defendant's original sentencing hearing in 1989 and at the 1994 resentencing hearing which is the subject of this appeal. In 1994, Rizzo testified that he discovered a shank in a cell occupied by defendant and another inmate, and that defendant admitted it was his. During closing arguments, defense counsel stated that defendant denied ownership of the shank. In rebuttal, the State argued that defendant had admitted the shank was his and defense counsel objected, stating there was no such evidence. The trial court commented that it did not recall whether defendant admitted or denied ownership of the shank. The court then stated:

---

[1] By this holding we do not imply that a defendant is no longer free to bring a post-conviction challenge based on a denial of the right to testify. However, to prevail in such a challenge, the defendant must demonstrate that he did not knowingly waive the right to testify. See *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990) ("*Martinez* states that 'to waive his right [to testify], all that [the defendant] needed to know was that the right existed,' [citation] thereby implying that if the defendant had not known the right existed he might not have been able to waive it").

"I just happen to have my notes which indicate as long as this has been brought out. It talks about him—and I believe his name was officer Rizzo *** recovered a shank from the defendant's cell, questioned both inmates.

I guess [defendant] was there with another man named *** Rollins—never saw the defendant attack anybody or use the shank. He indicated the defendant denied that it was his shank.

And then it goes on. Redirect. He was found guilty of an offense and was sanctions [*sic*] for that."

Defendant argues that the notes referred to by the trial court do not reflect Rizzo's testimony at the 1994 hearing, but his "more extensive and more aggravating" testimony at the 1989 hearing. We agree that the record on appeal, which includes a transcript of proceedings at both sentencing hearings (134 Ill. 2d R. 608), supports defendant's claim. In 1994, Rizzo did not testify that defendant denied it was his shank, was found guilty of an offense, or was sanctioned for it. Nor was Rizzo subject to redirect at the 1994 hearing. Therefore, where the trial court's notes reflect proceedings which occurred in 1989 but not in 1994, we will presume for purposes of this appeal that the trial court was referring to its notes from the original sentencing hearing.

While the State argues that defendant has waived this issue on appeal, we find that his failure to object to the court's use of its notes is excused where defense counsel did not know at the time that the court was referring to notes from the original sentencing hearing. Although defendant also failed to include the court's reference to the 1989 notes as error in his post-sentencing motion, application of the waiver rule is less rigid where the basis for the objection is the trial court's conduct. *People v. Nevitt*, 135 Ill. 2d 423, 455 (1990). We choose, therefore, to examine this issue on the merits.

"The law is well settled that, exclusive of certain matters of which the court may take judicial notice, the deliberations of the trial judge are limited to the exhibits

offered and admitted in evidence and the record made before him in open court. Any private investigation by the court *** constitutes a denial to the defendant of the constitutional guarantee of due process of law." *People v. Rivers*, 410 Ill. 410, 416 (1951).

Further, if an accused is not informed at trial of the facts of which the court is taking judicial notice, he does not know upon what evidence he is being convicted, and he is deprived of any opportunity to challenge the deductions drawn from such notice or to dispute the truth of the facts allegedly relied upon. *Garner v. Louisiana*, 368 U.S. 157, 173, 7 L. Ed. 2d 207, 219, 82 S. Ct. 248, 256-57 (1961). Thus, in the case at bar, the trial court erred in relying on notes from the previous sentencing hearing without informing the defense. The court's brief reference to "my notes" was insufficient to inform the defense that the court was taking judicial notice of testimony presented at a prior proceeding, and thus counsel had no opportunity to challenge any deductions which might be drawn from such testimony or to dispute its truth.

However, we do not believe this error deprived defendant of due process for several reasons. First, defendant was not prejudiced by the court's reliance on Rizzo's original testimony that defendant had denied ownership of the shank, because the court's notes mirrored what defense counsel maintained during closing argument. Defense counsel argued that the shank was never in defendant's actual possession and that he denied that it was his. The court, after referring to its notes, concurred with defense counsel. Additionally, our review of the record reveals that the trial court's isolated reference to its notes was inconsequential and had no effect on the sentence it imposed on defendant. Thus, where defendant has failed to demonstrate that he would not have received the death sentence absent the court's reliance on its notes, we consider the court's error to be constitutionally insignificant. See *People v.*

*Byron*, 164 Ill. 2d 279, 304 (1995) (trial court's reliance on allegedly incorrect statements in presentence report concerning capital defendant's drug use was constitutionally insignificant where defendant denied accuracy of report and court's comments on matter were isolated).

Defendant next contends that the trial court erred in considering that the jury in the original proceedings had sentenced defendant to death. During closing argument at defendant's resentencing hearing, the State urged the court to consider that essentially the same evidence had been presented to the jury in 1989 and that the jury had returned a sentence of death. A defense objection was overruled. In his post-sentencing motion, defendant alleged that the State erred in referring to the jury's finding in the first sentencing hearing and in arguing that "the same essential evidence was balanced by 12 people." At the hearing on defendant's motion, defense counsel responded as follows to the State's position that the references to the jury's finding were "proper": "[T]he State is arguing that somehow the jury's determination has a legitimate place in this Court's determination. That's wrong, Judge. That jury determination was thrown out by the Supreme Court. It has no validity in any aspect in this courtroom." We agree.

This court vacated the sentence of death originally imposed on defendant because the trial court's refusal to "reverse-*Witherspoon*" or "life-qualify" the jury, over defendant's objection, amounted to a due process violation. *Smith*, 152 Ill. 2d at 274. "It is elemental that the vacatur of a sentence renders the sentence null and void and of no legal effect." *People v. Brooks*, 158 Ill. 2d 260, 274 (1994). Further, as the United States Supreme Court has stated:

> "Although we have acknowledged that 'there can be "no perfect procedure for deciding in which cases governmental authority should be used to impose death," ' we have

also made it clear that such decisions cannot be predicated on mere 'caprice' or on 'factors that are constitutionally impermissible or totally irrelevant to the sentencing process.' [Citation.]" *Johnson v. Mississippi*, 486 U.S. 578, 584-85, 100 L. Ed. 2d 575, 584, 108 S. Ct. 1981, 1986 (1988).

Here, because the jury's sentence had been vacated and was "of no legal effect," it was an irrelevant factor in the resentencing process. Thus, the State's argument urging the trial court to consider the prior death sentence was improper and the court's failure to sustain defendant's objection to that argument was error. However, we do not agree with defendant that a new sentencing hearing is necessary, where it is apparent from the record that the trial court did not rely on the improper argument in determining to impose the death penalty. "The rule that this court will 'not lightly overturn the findings of the trial court, particularly when they are amply supported by the record,' applies to findings made during the aggravation and mitigation phase of the death penalty hearing. [Citations.]" *People v. Christiansen*, 116 Ill. 2d 96, 122-23 (1987).

In the case at bar, the record clearly indicates that the trial court relied on only proper evidence in sentencing defendant. In pronouncing sentence, the court noted that it had reviewed its notes, the exhibits which had been offered and admitted, the transcripts from the prior proceedings and the doctors' reports. The court then stated that it had also considered the testimony of the witnesses presented in aggravation and mitigation, the offenses defendant had been found guilty of committing, and its own finding that defendant was eligible for the death penalty. The court further stated that it had considered the facts of the case, concluding: "In our view—and we have now seen a fair number of cases, this is in our mind *** an exceptionally brutal case." The court then noted its consideration of defendant's post-arrest behavior and the evidence presented in miti-

gation and held: "Considering the facts of the case, your conduct subsequent to the arrest and also your conduct after conviction, we feel that the sentence of death is appropriate; and we sentence you thereto."

It is well established that where a sentencing hearing is conducted before the trial court instead of a jury, the court is presumed to consider only competent and relevant evidence in determining sentence. *People v. Ashford*, 168 Ill. 2d 494, 508 (1995). This rule applies to arguments and remarks of counsel. *People v. Grodkiewicz*, 16 Ill. 2d 192, 199-200 (1959). Unless it affirmatively appears that the court was misled or improperly influenced by such remarks and that they produced a judgment and sentence contrary to the law and the evidence, this court will not reverse. *Grodkiewicz*, 16 Ill. 2d at 200. At no point did the trial court herein refer to the sentence imposed by the jury or, in any way, indicate that it had influenced its sentencing decision. As we have noted, the express findings of the trial court contained in the record show that the court considered only the proper statutory factors in aggravation and mitigation. Thus, we find that defendant has failed to support his allegation that the trial court improperly considered the jury's finding at the original proceeding in sentencing defendant.

Defendant next argues that the trial court erred in allowing occurrence witness Sirena Moya to testify as a witness in aggravation. Defendant contends that Sirena's "testimony and her very appearance on the stand were inappropriate and overly prejudicial" and denied him a fair and reliable death penalty hearing. The State maintains that Sirena's presence at the scene of the crime makes her testimony relevant and reliable, "especially where she recognized defendant's voice from previous encounters."

At sentencing, the State called 11-year-old Sirena as

a witness and defendant objected, arguing her testimony was not relevant, reliable or appropriate. The trial court overruled the objection as to relevance, and after some qualifying questions, overruled the objection as to competency. Sirena then testified that on March 17, 1987, she was four years old. About 5 p.m. on that date, her parents went to a bar and left her at home with her cousin, Lisa Ferguson. The two were watching a movie and eating popcorn in the living room when there was a knock at the kitchen door. Lisa got up and asked who it was and a voice said it was Dave. Sirena recognized the voice as a friend of her father's, David Smith, and identified defendant as that person at the sentencing hearing.

Sirena further testified that Lisa told defendant that she "couldn't let him in" the apartment, and then Lisa came back and watched the movie again. Approximately an hour later, there was another knock at the door. Lisa asked who it was and a man's voice said it was Lisa's brother Max. Sirena testified that she was walking to her bedroom as Lisa opened the door. When Sirena saw defendant at the door, alone, she "ran underneath [her] bed." Sirena next heard Lisa screaming, then heard someone say "shut up." Sirena testified that besides Lisa's screams coming from the kitchen, she heard the silverware drawer shake, and then everything went silent. About five minutes later, Sirena, still under her bed, heard water running in the bathroom. A "police lady" then came into her room, put a blanket over her head and took her to the next-door neighbor's home. Sirena testified that when she saw her mother, she told her, "mommy, mommy, Lisa died." Later that night, Sirena went to the police station and picked defendant out of a lineup.

"Wide latitude is granted to the parties in introducing evidence in aggravation and mitigation at a capital sentencing hearing. The testimony presented need not

satisfy the more restrictive rules of evidence that govern the guilt-innocence phase." *People v. Tenner*, 157 Ill. 2d 341, 380 (1993); 720 ILCS 5/9—1(e) (West 1994). Rather, the only requirement is that the evidence be relevant and reliable. *People v. Fair*, 159 Ill. 2d 51, 89 (1994); *Tenner*, 157 Ill. 2d at 380. The evaluation of the evidence's relevance and reliability lies within the sound discretion of the sentencing judge. *Fair*, 159 Ill. 2d at 89; *Tenner*, 157 Ill. 2d at 380. "Evidentiary rules are waived at this stage because, in determining the appropriate sentence, the sentencing authority must possess the fullest information possible concerning the defendant's life, character, criminal record and *the circumstances of the particular offense*." (Emphasis added.) *Fair*, 159 Ill. 2d at 89-90.

Applying this authority to the case at bar, we find the trial court did not abuse its discretion in allowing Sirena to testify. The testimony was relevant to "the circumstances of the particular offense," providing a vivid aural picture of the victim's terror as defendant rummaged through the silverware in search of a weapon. Further, although defendant does not challenge the reliability of Sirena's testimony, we note that the trial court conducted a preliminary in-person examination of Sirena to determine her competence to testify, as was recommended in *People v. Crews*, 38 Ill. 2d 331, 338 (1967). Further, her statements were fully corroborated by other evidence presented at the sentencing hearing. See *People v. Gosier*, 145 Ill. 2d 127, 150-52 (1991) (no abuse of discretion in admitting, at the second stage of a capital hearing, corroborated testimony as to hearsay statements by a $3^{1}/_{2}$-year-old who was present at a homicide scene).

Defendant further argues that the State called Sirena as an aggravating witness to appeal to the court's sympathies, that her appearance on the stand, "primar-

ily as a victim of the crime," was more prejudicial than probative, and that the State's commentary on her testimony during closing arguments heightened the prejudicial effect of her testimony. It is true that the State argued in closing that Sirena's testimony was "compelling" because:

"[I]t took a lot for her to get up there and recount this. Because not only was Lisa Ferguson a victim of this man, [Serina] is a victim, too. Because she has to go through her life remembering this.

To be subject to such a horrible, horrendous crime at the age of four and have to live with it for the rest of your life, your Honor, is outrageous."

However, this court has ruled that certain victim impact evidence may be admitted during the sentencing phase, reasoning that it is relevant to a consideration of the appropriate punishment for a capital defendant for the sentencing authority to have before it evidence of the specific harm caused by the defendant. *People v. Hobley*, 159 Ill. 2d 272, 316 (1994); *People v. Howard*, 147 Ill. 2d 103, 158 (1991). Therefore, although evidence of any psychological trauma suffered by Sirena would be more appropriately addressed by an expert witness rather than by Sirena herself (see *People v. Pavlovskis*, 229 Ill. App. 3d 776, 783 (1992)), we decline to find that use of her testimony as victim impact evidence was so prejudicial that it rendered the sentencing hearing fundamentally unfair. See *Payne v. Tennessee*, 501 U.S. 808, 825, 115 L. Ed. 2d 720, 735, 111 S. Ct. 2597, 2608 (1991).

We next examine defendant's contention that the trial court erred in considering unsupported and irrelevant factors in aggravation. Defendant argues that the trial court exaggerated the "primary evidence in aggravation" by commenting, in imposing sentence, that Lisa Ferguson was stabbed "numerous times" and that there were "in excess of 50 sites of trauma" on her body. Defendant cites, as an additional misstatement of fact,

the trial court's comment that "there is also at least an inference that [defendant] knew that at least one small child was there." Defendant also argues that because defendant did not know Sirena Moya was present at the time of the offense, the court erred in overruling defendant's relevancy objection when the State asked a defense witness if he was aware the murder was committed in the presence of a small child. The State argues that defendant has waived review of this issue, and we agree that defense counsel's objections at sentencing are incomplete and the allegation in the post-sentencing motion is lacking in specificity. See *Enoch*, 122 Ill. 2d at 186. However, as we have noted, application of the waiver doctrine is less rigid where the basis for the objection is the trial court's conduct. *Nevitt*, 135 Ill. 2d at 455. Thus, we choose to address the merits of the issue.

It is clear that reliance on an improper factor in imposing the death penalty requires resentencing because of the "profound importance" of the trial court's role in weighing aggravating and mitigating factors. *People v. Hayes*, 139 Ill. 2d 89, 154 (1990); *People v. Brownell*, 79 Ill. 2d 508, 535 (1980). Our review of the record reveals, however, that the trial court herein based its sentence of death on evidence properly before it.

First, the trial court's observation that defendant had stabbed the victim "numerous times" was supported by the testimony of the medical examiner. Dr. Nancy Jones stated that the victim had sustained "sharp injuries," including three stab wounds and two incised wounds. Indeed, where "multiple stab wounds with strangulation contributing" was Dr. Jones' opinion as to the cause of death, we find no inaccuracy in the court's comment. Similarly, the court's recollection of "in excess of 50 sites of trauma" on the victim's body was not error

where it is apparent from the record that the "sites of trauma" were profuse. Although Dr. Jones' testimony does not provide their exact number, she stated that, in addition to the "sharp injuries," the victim had "numerous blunt trauma injuries *** to the head, the trunk and the extremities." Dr. Jones further testified: "[I]n my autopsy protocol I list about 29 separate areas of injury. There were more than 29 injuries because in some areas I described more than one injury." The trial court also noted defendant's own statement, made after his arrest, that "he was glad that [the victim] had died because he didn't want her to live remembering how bad [*sic*] he had beaten her." Thus, the exact number of injuries was immaterial where that fact would not have changed the trial court's valid conclusion, based on the evidence presented, that this was "an exceptionally brutal case."

Defendant further claims the trial court considered the unsupported and irrelevant factor that defendant knew four-year-old Sirena Moya was in the apartment at the time of the murder. In imposing sentence, the trial court remarked: "[Defendant] broke into the apartment of a friend to steal a VCR ***. He knew that the victim was alone. And there is also at least an inference that he knew that at least one small child was there." It is therefore clear that the court considered both factual possibilities in sentencing defendant. We see no error in this finding where, contrary to defendant's contention, the record provides support for both conclusions. Testimony at both defendant's trial and sentencing established that he was a "family friend" of the Moyas. Thus, it may be inferred that he knew the couple had a small daughter who was not with them at the bar that evening and was likely at home. Additionally, Sirena testified that when Lisa Ferguson opened the apartment door, she saw defendant and then ran and hid in her

bedroom. This testimony raises the inference that when the door opened, defendant likewise saw Sirena. The record shows that the trial court properly weighed the evidence presented in aggravation and mitigation.

Defendant next argues that the trial court erred in finding there was no competent evidence that self-defense justified defendant's act of throwing scalding water at men on two separate occasions while imprisoned. Defendant also contends the manifest weight of the evidence supported his self-defense claim over the trial court's conclusion that defendant "just went out of control."

At the sentencing hearing, Robert Green, an officer with the Illinois Department of Corrections assigned to the "condemned unit" at Pontiac, testified that on May 14, 1992, he heard an inmate named Neal yelling and saw him with his clothes wet and blisters forming on his arms. Hot steam rose from Neal's clothing and water dripped from the bars of defendant's cell. Green asked Neal what happened and Neal said he "got burnt." Green then heard defendant say, "I got the last laugh." When other officers arrived on the scene, defendant, in anticipation of being disciplined, had his belongings packed and was ready to move. Defendant handed his "stinger," a coil used to heat water, to an officer. Following a hearing on the incident, defendant received six months' segregation and had his "grade classification" changed. Green testified that as a standard precaution taken when an inmate is identified as a possible victim, Neal, who had been a laundryman and free to walk the gallery uncuffed, lost his job and was placed back in his cell "like a regular ordinary resident of death row." Green stated that although the incident was "no accident," no one ever learned what the problem was between defendant and Neal.

Brian Upchurch, another Department of Corrections

officer assigned to the condemned unit at Pontiac, testified at sentencing that on November 11, 1992, defendant threw boiling water on him as he walked past defendant's cell. The water, which Upchurch thought smelled of urine, hit him on the left side of his face, neck, shoulder, and back. Defendant told Upchurch, "Now, quit walking around like a peacock," and stated that Upchurch was not as tough as he thought he was. Upchurch was treated for burns, but did not suffer any permanent disability. As defendant was being taken from his cell to segregation, the resident in the next cell threw boiling liquid on defendant and the officers escorting him.

Upchurch further testified that just prior to this incident, a condemned unit inmate named Aaron Patterson had been placed in segregation as a result of a complaint about his monopolizing the telephone. Upchurch stated that he did not know why Patterson would believe that his segregation initiated with defendant and Upchurch, and denied that defendant ever approached him in an effort to straighten out any misunderstanding other inmates had about defendant informing on them to Upchurch. Upchurch testified that as a result of this scalding incident, defendant's classification was downgraded, he was placed in segregation for a year, and he was also prosecuted and convicted for aggravated battery.

Dr. Lawrence Heinrich, a clinical psychologist, testified that he was asked by defense counsel to evaluate defendant for purposes of gathering evidence in mitigation. Dr. Heinrich reviewed various documents, interviewed defendant and others, and administered four psychological tests. Dr. Heinrich concluded, *inter alia*, that defendant could function and adjust in the structure of an incarcerated setting. Asked about the scalding incidents, Dr. Heinrich stated that they were examples

of "the way he was surviving there." Dr. Heinrich distinguished inmates like defendant, who are fearful and "counterphobic" and do things to protect themselves, and inmates who are "overtly predatory and aggressive." Dr. Heinrich stated that from defendant's description of the scalding incidents, "he was attempting to protect himself and [gain] some status with people who [sic] he felt could protect him, and also to retaliate against a guard whom *** he perceived or they perceived to be excessively aggressive with other inmates."

Dr. George Savarese, a licensed clinical social worker, testified in mitigation that he compiled a psychosocial developmental history of defendant. Dr. Savarese reviewed various records and documents, and interviewed defendant and other sources. Dr. Savarese concluded, *inter alia*, that defendant could adapt to incarceration. Asked about the two scalding incidents, Dr. Savarese said it was his understanding that Neal and defendant had quarreled and defendant believed he might be in danger. Defendant threw hot water on Neal in order to protect himself and so that "the system would separate them and [defendant] wouldn't have to be exposed to [Neal] anymore." In the other instance, it was Dr. Savarese's understanding that defendant had been labeled as a "snitch" after another inmate was disciplined for abusing telephone privileges. Defendant told Dr. Savarese that he tried to discuss the situation with the guard and the guard "just laughed him off and didn't really listen." Defendant felt that if he could get back at the guard it would show that he was not a "snitch." Dr. Savarese testified that the two incidents were "an aggressive way of protecting one's self" which showed defendant's poor judgment .and heightened fearfulness, rather than any malicious or predatory nature.

As previously noted, in imposing sentence, the trial

court stated that on the date of the murder defendant "just went out of control." The court continued:

"You did not just do it on March 17, you did it again. You did it again on at least two occasions in our mind. And we don't by [sic] this, that he was a snitch and he was doing this to show—I don't think that was the case. And I don't think there is any compitent [sic] evidence of that."

Defendant contends that the court erred in concluding there was no competent evidence that the scalding incidents were acts of self-defense, where defendant's account of the incidents to Drs. Savarese and Heinrich was credible and uncontradicted.

Defendant cites *People v. Jordan*, 4 Ill. 2d 155, 163 (1954), for the general proposition that the finder of fact cannot disregard a defendant's version of what occurred unless it is improbable, uncorroborated or contradicted in its material parts. According to defendant, the court erred in not believing his explanation and, instead, applying its own characterization to what occurred. However, the trial court is permitted to draw reasonable inferences from the evidence introduced during trial. *People v. Ward*, 154 Ill. 2d 272, 339 (1992). Here, where the officers testified that after throwing scalding water on his victims defendant said, "I got the last laugh," and "quit walking around like a peacock," a reasonable inference may be made that defendant's actions were motivated by maliciousness and uncontrolled anger, rather than self-defense. Thus, the trial court's finding that defendant "just went out of control" was not against the manifest weight of the evidence. See *Christiansen*, 116 Ill. 2d at 122 (supreme court will not lightly overturn trial court's findings during aggravation and mitigation phase of death penalty hearing).

Further, although defendant claims that the trial court was not free to disregard the doctors' testimony (see *In re Ashley K.*, 212 Ill. App. 3d 849, 890 (1991) (the

circuit court cannot disregard expert medical testimony that is not countervailed by other competent medical testimony or medical evidence)), the credibility and weight to be given this testimony was for the trial court as trier of fact (*People v. Oaks*, 169 Ill. 2d 409, 467 (1996)). Where both Dr. Heinrich and Dr. Savarese admitted that their interpretations of the scalding incidents came from defendant, and we have concluded that the trial court could reasonably reject his account based on the evidence and inferences therefrom, we cannot say that the trial court abused its discretion in finding there was no competent or credible evidence to support defendant's self-defense claim. See *Oaks*, 169 Ill. 2d at 468.

Defendant next contends that he was denied a fair and reliable sentencing hearing because the trial court failed to consider in mitigation the testimony of Josephine Palomino, defendant's former girlfriend and the mother of his son. At sentencing, defendant called three witnesses in mitigation and stipulated to the testimony of four mitigation witnesses who had testified at the original sentencing hearing. In presenting its reasons for imposing the death penalty, the trial court stated that it had considered "the testimony of the two individuals called in mitigation" and included in its discussion the mitigation testimony of the two doctors. Defendant argues that the court forgot or refused to consider the mitigating testimony of the third witness, Palomino. Although the State contends that defendant has waived review of this issue by failing to make an objection at sentencing, the record shows defense counsel attempted to preserve the issue through its inclusion in the post-sentencing motion, and, once again, application of the waiver rule is less rigid where the basis for the objection is the trial judge's conduct. *Nevitt*, 135 Ill. 2d at 455.

It is clear that while the sentencer in a capital case may determine the weight to be given relevant mitigating evidence, it may not give such evidence no weight by excluding it from consideration. *Eddings v. Oklahoma*, 455 U.S. 104, 114-15, 71 L. Ed. 2d 1, 10-11, 102 S. Ct. 869, 877 (1982); *People v. Munson*, 171 Ill. 2d 158, 193 (1996). Here, however, despite defendant's contentions, we are unconvinced that the trial court failed to consider Palomino's mitigating testimony simply because he failed to specifically mention it in imposing sentence. This court has held that a sentencer in a capital proceeding is not required to make specific findings as to the aggravating and mitigating factors it relied upon in reaching its verdict. *People v. Gaines*, 88 Ill. 2d 342, 383-84 (1981); *People v. Brownell*, 79 Ill. 2d 508, 541-44 (1980). This court has further stated:

"Although the requirement of an explanation or designation by the sentencing authority of certain reasons necessary for imposition of the death penalty has been noted with approval in decisions upholding the validity of death penalty statutes [citations], this court consistently has held that a statement of findings is not constitutionally required in the second part of a sentencing hearing [citations]. Meaningful review can, and does, occur in its absence ***." *People v. King*, 109 Ill. 2d 514, 550-51 (1986).

In imposing sentence herein, the trial court declared several times that it had reviewed its notes, which would encompass Palomino's "live" testimony, and the transcripts submitted from the prior proceeding, which would include Palomino's previous testimony entered by stipulation. We agree with the State that the court's failure to discuss Palomino's testimony was most likely due to the fact that the court had considered her testimony and given it little weight. See *Jackson v. Roth*, 24 F.3d 1002, 1005 (7th Cir. 1994) (the "predictable" testimony of relatives is usually favorable and receives little weight at sentencing hearings as a result). Thus, we find no error in the court's omission.

Defendant next contends that the trial court improperly failed to consider nonstatutory mitigating factors and limited the two statutory mitigating factors it did consider. Careful examination of the record shows, however, that the trial court weighed all of the mitigation evidence defendant presented and found it insufficient to preclude imposition of the death penalty. Section 9—1(c) of the Criminal Code of 1961 provides, in pertinent part:

"The court shall consider *** any mitigating factors which are relevant to the imposition of the death penalty. *** Mitigating factors may include but need not be limited to the following:

(1) the defendant has no significant history of prior criminal activity;

(2) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance, although not such as to constitute a defense to prosecution." 720 ILCS 5/9—1(c) (West 1994).

In pronouncing sentence herein, the trial court made the following comments with regard to evidence in mitigation:

"We consider the matters which were alluded to in opening argument, are alluded to once again in closing and were testified to during those proceedings.

Number 1, that the defendant prior to this incident had—there was no evidence of a prior criminal activity. *** [H]owever, we must temper that a little bit because there was at least testimony *** regarding some incidents of prior criminal activity at his younger years.

We have also *** received evidence and testimony regarding an additional factor *** not testified to at the original proceeding, that being the testimony of the doctors regarding what they view and what they interpret as [defendant's] condition of a boarderline [sic] personality disorder and a schizotypo *** disorder.

* * *

We do not feel there is *** any evidence of any mental

disease. \*\*\* Maybe I ought to correct that, and say organic mental disease. \*\*\* [W]e just don't think there is any evidence of any mental disease or disorder caused by anything of that nature.

\* \* \*

There is as we referred to mitigation offered. The question is, is it sufficient. Everyone has stresses. [Defendant], you lost control. You lost control not because in our mind of any mental condition, not because of any disease. You just went out of control."

First, defendant contends that the court's comments indicate it considered only the two statutory factors in mitigation alluded to in defense counsel's opening statement, but not the nonstatutory factors that were mentioned, such as the value of defendant's life and his troubled background. We believe it is clear from a reading of the court's comments as a whole that, in the prefatory statement quoted above, the court meant it was considering *all* the mitigating "matters which were alluded to in opening argument \*\*\* and were testified to during those proceedings," and not just the statutory mitigating factors which it chose to specifically mention. See *Gaines*, 88 Ill. 2d at 383 (capital sentencer is not required to make specific findings of what aggravating and mitigating factors it relied upon in reaching its verdict).

Second, defendant argues the trial court improperly limited the statutory mitigating factor set forth in section 9—1(c)(1) to "no evidence of a prior criminal activity," and indicated it was not present in light of testimony "of prior criminal activity at his younger years." Defendant has misinterpreted the court's remarks, which, fairly read, properly addressed whether defendant had "no significant history of prior criminal activity" under section 9—1(c)(1). 720 ILCS 5/9—1(c)(1) (West 1994). Defendant presented evidence at sentencing that he committed shoplifting and burglary when he

was 12 to 14 years of age. This court has held that the sentencer may consider in aggravation evidence of a defendant's prior misconduct, including juvenile delinquency, "although the misconduct may not have resulted in prosecution or conviction." *People v. Lego*, 116 Ill. 2d 323, 346-47 (1987); see also *In re W.C.*, 167 Ill. 2d 307, 341 (1995). Therefore, here, we find no error where the trial court first found the presence of the statutory mitigating factor, and then "tempered" that finding by noting evidence of defendant's juvenile misconduct.

Third, defendant argues the trial court improperly limited the statutory mitigating factor set forth in section 9—1(c)(2) to insanity arising from an organic mental disease. Dr. Savarese testified in mitigation that defendant had a borderline personality disorder with schizotypal features, possibly caused by either a mental illness or brain damage. Dr. Savarese further testified that, in his professional opinion, defendant was suffering an extreme mental and emotional disturbance, possibly a "transient psychotic episode," at the time he murdered Lisa Ferguson. Dr. Heinrich testified in mitigation that defendant suffered from long-standing emotional and personality deficiencies, the most prominent of which were borderline personality and schizotypal personality disorders. Dr. Heinrich concluded that these deficiencies, exacerbated by defendant's drug and alcohol abuse, severely impaired his judgment at the time of the murder.

Defendant argues that the court's comments regarding the absence of any "organic mental disease" in defendant are irrelevant to whether the statutory mitigating factor of "extreme mental or emotional disturbance" existed. This is true. However, it is defendant who presented the testimony concerning the possibility of organic disorders or brain damage. The trial court was simply stating that it did not believe there was "any ev-

idence" to support a finding "of any [organic] mental disease or disorder caused by anything of that nature." The court specifically addressed the statutory mitigating factor when it later stated: "Everyone has stresses. [Defendant], you lost control. You lost control not because in our mind of any mental condition, not because of any disease. You just went out of control." It is clear that the court differentiated between the two separate mental condition arguments made by defendant. We therefore find no impropriety in the court's rejection of the section 9—1(c)(2) mitigating factor of "extreme mental or emotional disturbance." 720 ILCS 5/9—1(c)(2) (West 1994); see *Oaks*, 169 Ill. 2d at 467 (although expert testimony as to presence of statutory mitigating factor was unrebutted, the credibility and weight to be given the testimony were for the trial court as trier of fact).

We next address defendant's contention that the trial court applied an unconstitutionally vague standard in sentencing defendant to death. In concluding its remarks, the trial court stated: "Considering the facts of the case, your conduct subsequent to the arrest and also your conduct after conviction, we feel that the sentence of death is appropriate; and we sentence you thereto." Defendant argues that the factors cited by the trial court are nonspecific, and equate and commingle the offense for which defendant was being sentenced with his post-offense conduct. However, a defendant's post-offense conduct is relevant at the aggravation-mitigation stage of a death penalty hearing (*People v. Hope*, 168 Ill. 2d 1, 38 (1995)), and nothing in the record indicates that the court further used this factor as an unconstitutional basis for imposing the death penalty herein.

Defendant also argues that the trial court's use of the word "appropriate" in imposing the death penalty indicates that the court added a "second 'appropriate-

ness' tier to the sentencing process," a practice that this court has rejected. *People v. Albanese,* 104 Ill. 2d 504, 536-37 (1984). However, it is clear from the record that the trial court acknowledged the existence of the two statutorily mandated phases of capital sentencing in Illinois, and then applied both phases to the facts of defendant's case, stating:

> "We began these proceedings with the eligibility phase. And based upon the convictions and also the fact that at the time [defendant] had attained the age of 21, he was eligible for the death penalty.
>
> As we stated, we reviewed the transcripts submitted to us. We have reviewed our notes. The question now before us is whether there are *** mitigating factors sufficient to preclude the imposition of the death penalty."

The trial court made no mention of an additional tier, or of a "final test." After considering the evidence in aggravation and mitigation, the court imposed the death penalty, a sentence it characterized as "appropriate." Rather than applying an unconstitutionally vague standard, we interpret the court's use of "appropriate" to mean the death penalty was "proper," "correct," and "suitable." Indeed, this court has found the death penalty to be "appropriate" numerous times. See *People v. Bounds,* 171 Ill. 2d 1, 71 (1995); *People v. Taylor,* 166 Ill. 2d 414, 432 (1995); *People v. Christiansen,* 116 Ill. 2d 96, 129 (1987).

Defendant next asserts that his death sentence is "excessive, disproportionate, and inappropriate" given his character and history and the circumstances of the offense. We disagree. First, with regard to defendant's claim that his sentence is "disproportionate," we note that "[c]omparative proportionality review in death penalty cases is not required by the United States Constitution (*Pulley v. Harris* (1984), 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871) and is not a feature of the capital sentencing process in Illinois (*People v. Jimerson* (1989),

127 Ill. 2d 12, 54)." *People v. Page*, 156 Ill. 2d 258, 270 (1993). We therefore decline defendant's invitation to compare the sentence in the case before us with penalties imposed in similar cases. See *People v. Perez*, 108 Ill. 2d 70, 92 (1985).

Next, we agree with defendant that analysis of the propriety of the death penalty requires an individualized consideration of the circumstances of the offense and of the character and background of the offender. *Eddings v. Oklahoma*, 455 U.S. 104, 110-12, 71 L. Ed. 2d 1, 8-9, 102 S. Ct. 869, 874-75 (1982); *People v. Shatner*, 174 Ill. 2d 133, 161 (1996). In deciding whether the death penalty is excessive in a particular case, this court examines whether the circumstances of the crime and the character of the defendant are such that the deterrent and retributive functions of the "ultimate sanction" will be served by its imposition. *Shatner*, 174 Ill. 2d at 161.

Defendant was convicted of murder, aggravated criminal sexual assault and home invasion. The circumstances of the offense presented herein are that defendant went to the apartment where Lisa Ferguson was baby-sitting with the intent to steal a videocassette recorder. Defendant was denied entrance to the apartment, but returned later with the express purpose of murdering Ferguson. Defendant forced his way into the apartment and sexually assaulted, stabbed and strangled Ferguson. Defendant inflicted over 30 wounds to Ferguson's body, including penetrating her anus with his penis or the curling iron found beneath her. Additionally, the court heard character evidence that defendant had a history of theft, shoplifting and burglary dating back to when he was a juvenile, although he was never convicted of any of these offenses. Defendant also had an extensive history of drug abuse, but had repeatedly refused drug counselling when his girlfriend urged him

to seek help. Since being incarcerated, defendant had scalded another inmate and a correctional officer with boiling water, and a shank was found in his cell on two occasions.

In contrast, the evidence defendant presented in mitigation consisted mainly of testimony that he had had a troubled childhood, that he had a good relationship with his son, born one month after the murder, and that at the time of the offense his judgment was severely impaired because he was under the stress of impending marriage and fatherhood and was suffering from emotional and personality deficiencies which were exacerbated by his drug and alcohol abuse. We find that the trial court's determination that the aggravation evidence outweighed the mitigation evidence is supported by the record. We therefore conclude that imposition of the death penalty was not excessive or inappropriate under the particular facts and circumstances of this case.

Finally, defendant contends that the Illinois death penalty statute is unconstitutional because it does not sufficiently minimize the risk of arbitrarily or capriciously imposed death sentences. Defendant concedes that this court has reviewed many of the issues he raises, and has resolved them adversely to his position. We continue to adhere to those holdings. See *People v. Cole*, 172 Ill. 2d 85, 114-15 (1996) (rejecting the arguments the statute is invalid for the discretion it affords the prosecutor in deciding to request the death penalty in a particular case, for failing to require the prosecution to provide the defense with pretrial notice of the aggravating evidence to be used at capital sentencing, or for not requiring the sentencer to make a written statement of its findings); *People v. Hooper*, 172 Ill. 2d 64, 84 (1996) (rejecting the argument the statute is unconstitutional because it does not require the sentencer

to make an ultimate determination that death is the appropriate punishment); *People v. Taylor*, 166 Ill. 2d 414, 439 (1995) (rejecting the argument the statute unconstitutionally allows the sentencer to consider "any" aggravating factor); *People v. Strickland*, 154 Ill. 2d 489, 538-39 (1992) (rejecting the argument defendant has the burden of proof). Defendant urges us to give "renewed attention" to the question of whether the statute provides adequate judicial review. We likewise decline to revisit this argument, having repeatedly held that the statute provides sufficient information-gathering procedures to insure adequate appellate review of death sentences. *People v. Bounds*, 171 Ill. 2d 1, 72 (1995); *People v. Albanese*, 104 Ill. 2d 504, 541-42 (1984).

Defendant also raises a question he contends this court has not considered, namely, whether the use of the plural in the statutory phrase "no mitigating *factors* sufficient to preclude the imposition of the death sentence" prevents the sentencer from finding a single mitigating factor is sufficient to preclude death. (Emphasis added.) 720 ILCS 5/9—1(h) (West 1994). However, it is well established that, in Illinois, the sentencer's belief "that any one mitigating factor sufficient to preclude the death penalty exists is sufficient to do so." *People v. Ramey*, 152 Ill. 2d 41, 77 (1992); see also *People v. Brown*, 172 Ill. 2d 1, 58-59 (1996). "As such, Illinois' death penalty procedure clearly provides for meaningful consideration of any and all mitigating factors." *Ramey*, 152 Ill. 2d at 77. Further, where, as here, the trial court is the sentencer, it is presumed to know the law and apply it properly, and its decision regarding sentencing will be presumed to be proper absent an affirmative showing of error. See *People v. Askew*, 273 Ill. App. 3d 798, 805 (1995). Accordingly, defendant has raised no arguments to persuade us to reconsider our conclusion that the death penalty statute insures adequate safe-

guards to prevent the arbitrary or capricious imposition of the penalty. See *People v. Shatner*, 174 Ill. 2d 133, 162-63 (1996), citing *People v. Kubat*, 94 Ill. 2d 437 (1983).

For the reasons stated, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, September 9, 1997, as the date on which the sentence of death entered in the circuit court of Cook County is to be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1994). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is confined.

*Affirmed.*