25 June 1999

NO. 4-98-0132

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from 

Plaintiff-Appellee, ) Circuit Court of

v. ) McLean County

TODD L. FRIEBERG, ) No. 89CF20

Defendant-Appellant. ) 

) Honorable

) W. Charles Witte,

) Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1989, a jury convicted defendant, Todd L. Frieberg, of controlled substance trafficking (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1) and possession of a controlled substance (more than 900 grams of a substance containing cocaine) (Ill. Rev. Stat. 1987, ch. 56½, par. 1402).  The trial court later sentenced him to 30 years in prison on the trafficking conviction and 15 years in prison on the possession conviction, to be served concurrently. 

In October 1990, this court affirmed defendant's convic­

tions and sentences (see 
People v. Frieberg
, 202 Ill. App. 3d 1115, 593 N.E.2d 1178 (1990)).  The supreme court granted defendant's petition for leave to appeal, and in March 1992, that court also af­firmed defendant's convic­tions and sentences (see 
People v. Frieberg
, 147 Ill. 2d 326, 589 N.E.2d 508 (1992)).  In November 1992, defen­dant filed a 
pro
 
se
 peti­tion for postconviction relief under the Post-Convic­tion Hearing Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 122-1 
et
 
seq
. (now 725 ILCS 5/122-1 
et
 
seq
. (West 1992))).  In December 1992, the trial court appointed postconviction counsel to repre­sent defen­dant and granted leave to amend defendant's petition.  

In April 1997, defendant's postconviction counsel filed an amended petition, alleging numerous constitu­tional violations, including that (1) defendant was denied a fair trial because a juror re­ceived an "unau­tho­rized communica­tion" during trial; and (2) defendant's trial coun­sel, J. Steven Beckett, provid­ed inef­fec­

tive assistance of counsel.  During Febru­ary 1998, the trial court granted part of the State's motion to dismiss the amended peti­tion and dismissed some claims without con­ducting an eviden­tia­ry hear­

ing.  Howev­er, the court con­duct­ed an eviden­tia­ry hearing on defendant's claim of inef­fective assis­tance of counsel and subsequently denied that portion of defendant's amended postconviction peti­tion.

Defendant appeals, arguing that the trial court erred by (1) dismissing without an evidentiary hearing defendant's claim that he was denied a fair trial when one juror re­ceived an "unau­

tho­rized communica­tion" during trial, and (2) denying the remainder of his amended postconviction petition follow­ing an eviden­tiary hearing.  Defendant contends that the record shows he re­ceived inef­fec­tive assis­tance of trial counsel when Beckett (a) failed to advise defen­dant of the potential conse­quences of rejecting the State's plea offer, (b) usurped defendant's right to choose whether to accept the plea offer, and (c) usurped defendant's constitu­

tional right to choose whether to testify at trial.  We affirm.   

I. BACKGROUND

Defendant's amended postconviction petition alleged the follow­ing:  (1) he was denied a fair trial when one juror re­ceived an "unau­tho­rized communica­tion" during trial; (2) he was denied a fair trial when jurors read and discussed news accounts of his trial; (3) his 30-year prison sentence and $50,000 fine constituted an "illegal jury tariff" because the trial court imposed that sentence on defendant due to "his contin­ued asser­tion of his right to a jury trial even after the State offered [him] a plea to a Class 4 [f]elony with probation and fine"; (4) the controlled substance traffick­ing statute (Ill Rev. Stat. 1987, ch. 56½, par. 1401.1) was vague and confused the jury; (5) Beckett provid­ed inef­

fec­tive assistance of counsel during trial by (a) failing to file a motion 
in
 
imine
 requesting that the court bar the prosecution from com­menting on defendant's asser­tion of his right to counsel during police interrogation, (b) "opening the door to comment on this sup­pressed evidence by an ineptly phrased, vague[,] and open [-]ended question" to a wit­ness, (c) "by delving into the contents of the suppressed state­ment" at trial, (d) failing to inform defendant that he did not have to testify on his own behalf at trial, and (e) failing to challenge a search warrant; (6) the cumulative effect of Beckett's trial errors denied defendant effective assistance of counsel and a fair trial; and (7) defen­dant was denied effective assis­tance of appellate counsel because Beckett "labored under a 
per
 
se
 con­flict" because he could not claim his own ineffective­ness.  In Febru­ary 1998, the court dismissed defendant's first four claims without con­ducting an eviden­tia­ry hear­ing.  However, the court conducted an evidentia­ry hearing on defendant's claims of inef­fective assis­tance of counsel.  We discuss the evidence pre­sent­ed at the hearing only to the extent necessary to put defendant's arguments in context.

Lewis Frieberg, defendant's father, testified on defendant's behalf that he hired Beckett and another attorney to repre­sent defendant.  Although Lewis testified that Beckett never advised defendant that he had a consti­tutional right not to testify on his own behalf, Lewis acknowledged that he was not present during every conversation between defen­dant and Beckett. 

Lewis also testified in an offer of proof that around the second or third day of defendant's trial, Beckett told defendant and defendant's parents that the State had offered a "Class 4 [felo­ny] plea."  Beckett also told them that the only reason the assistant State's Attorney had made the plea offer was because he knew defendant was winning the case.  Lewis then stated the following:  

"[Beckett] said he wasn't here to plea[d] his cases, that we, you know, should go on with the trial and then he gave us a few minutes.  My wife said, [`]can we think about it for awhile,['] and he said, [`]no, we have to know right now.[']"

Lewis also stated that defendant, Lewis, and defendant's mother "just answered [Beckett] right there.  We just said okay."  

On cross-examination during the offer of proof, Lewis testified that after Beckett informed defendant and defendant's parents of the State's plea offer, Beckett told them they needed to make a decision. 

Carolyn Frieberg, defendant's mother, testified on defendant's behalf that she was present during meetings between defendant and Beckett, and Beckett was the "decision maker."  Carolyn stated that Beckett did not advise defendant of his constitutional right not to testify on his own behalf.  

Carolyn also testified in an offer of proof that around the third day of defendant's trial, Beckett told defendant and his parents that the State had offered a plea bargain.  Carolyn stated that when she, defendant, and Lewis asked if they could wait and think about it, Beckett told them that he does not usually plea bargain his cases.  Carolyn also stated that "we just solely left [the decision] up to [Beckett] because we don't know anything about the law."  

On cross-examination during the offer of proof, Carolyn testified, in pertinent part, as follows:

"Q.  [Assistant State's Attorney:]  [Beckett] made a recommendation of what his position was; would that be correct?

A.  [Carolyn:]  Yes, I guess.

Q.  And you ultimately made a decision?

A.  I guess, yes."

On redirect examination, Carolyn testified that they followed Beckett's recommendation regarding whether defendant should accept the State's plea offer.

Defendant testified on his own behalf that until the third day of his trial, Beckett had never discussed whether defendant would testify.  Defendant stated Beckett never advised defendant regarding his consti­tu­tion­al right to choose whether to testify at trial.  Beckett never asked defendant whether he wanted to testi­fy, and Beckett ulti­mately decided that defen­dant would testi­fy.  Defen­dant also stated that had he known of his consti­

tutional right not to testify, he "certainly would have given it some thought," but he did not know whether he would have chosen to testify.   

On cross-examination, defendant testified that prior to the start of his trial, Beckett "probably" discussed whether defendant was going to testify at trial.  Defendant acknowledged being present during the trial court's pretrial admonishments to the jury; however, he denied hearing the court inform the jury that defendant did not have to testify on his own behalf.  

Defendant also testified in an offer of proof that on the third day of his trial, Beckett told defendant "it was his duty to inform [defendant] that a plea offer had been made by the State."  Beckett also told defendant that the only reason the assistant State's Attorney had made the plea offer was because he knew defendant was winning the case.  Defendant asked Beckett what the penalties were for a "Class 4 [felony] plea bargain," and Beckett told him that the penalties ranged from probation to three years in prison.  Defendant then asked Beckett if defendant could have time to think about the decision, and Beckett told him that he had to decide within 15 minutes.  Defendant testified that he followed Beckett's "directions" to proceed with the trial. 

Beckett testified on the State's behalf that defendant's parents con­tact­ed him sometime in early 1989 and asked him to repre­sent defen­dant in this case.  Prior to trial, Beckett met with defendant between 5 and 10 times to discuss defendant's case, including whether defendant would testify on his own behalf.  In that regard, Beckett testified, in pertinent part, as follows:

"Q. [Assistant State's Attorney:]  So prior to trial, there were actual discussions with [defendant] about the fact of whether or not he would be testifying?

A.  [Beckett:]  Yeah.  Yeah, I don't know if it is fair to describe it as a dis­cussion.  This wasn't a civics lesson on whether or not you had the right to testify; it was a shared strategy that I felt [defen­dant] had to testi­

fy and I told him why.

Q.  
Did
 
you
 
ever
 
discuss
 
with
 
him
 
the
 
fact
 
that
 
he
 
didn't
 
have
 
to
 
testify
?

A.  
Sure
.  Of course, what I pointed out to him was because he had this false exculpa­

tory statement and it is the first statement to, I think, [Officer Mark] Bagnell that, in essence, says [`]I don't know anything about any cocaine,['] and if [defendant] doesn't testify, then the jury is left with the im­

pression that he lied, that he told the po­lice that he didn't know anything about the cocaine when all the other witnesses are going to testify about seeing this brick of cocaine in his apartment and seeing [defen­dant] in the same room, which didn't make any sense.  It is not a theory that will ever fly, and I ex­

plained that to [defendant], that this is just a case, [defendant], where you have to testify and he agreed and we set about to work on his testimony and then cor­roborating his testimony with other wit­ness­es, which I thought we did effectively.

Q.  
So
 
to
 
be
 
clear
, 
you
 
indicated
 
to
 [
defendant
] 
that
 
he
 
didn't
 
have
 
to
 
testify
, 
but
 
you
 
explained
 
to
 
him
 
the
 
reasons
 
why
 
he
 
needed
 
to
 
testify
?

A.  
That's
 
correct
. 

Q.  So you explained what would happen if he didn't testify?

A.  That's correct.  I explained to him that in my opinion he didn't have a chance if he didn't testify and the reason why he did­n't have a chance, because the jury would only hear the lie that was told and not hear that he told the truth to the police, which was the second statement, which was the other complex thing about the case.

Q.  
And
 
after
 
you
 
explained
 
all
 
that
 
to
 [
defendant
], 
he
 
agreed
 
with
 
you
 
and
 
indicated
 
he
 
was
 
going
 
to
 
testify
?

A.  
Yes
."  (Emphasis added.) 

Beckett also testified that sometime during defendant's trial, the assistant State's Attorney offered defendant the opportunity to plead guilty to a Class 4 felony.  Beckett dis­cussed the plea offer with defendant and his parents because he "felt that it was a serious matter."  He told defendant that "what should happen in this case depended largely on how [defen­dant] felt he was going to do as a witness, whether he felt good about testifying."  Defendant told Beckett that he felt well prepared and "felt he would go a good job."  Beckett stated that defendant himself ultimately decided not to accept the State's plea offer.  

After considering the evidence presented and counsels' argu­ments, the trial court denied the ineffective assis­tance of counsel claims set forth in defendant's amended postconviction petition.  

This appeal followed.   

II. ANALYSIS

A.  Proceedings Under the Act

"The general rules regarding post[]con­

viction proceedings are familiar.  The [Act] provides a remedy for defen­dants who have suf­

fered a substantial viola­tion of their consti­

tutional rights at trial.  [Citation.]  A post[]conviction pro­ceeding is not an appeal of the underlying  conviction; rather, it is a collateral attack on the trial court proceed­

ings in which a defendant at­tempts to estab­

lish constitution­al violations that have not been and could not have been previously adju­

dicated.  [Cita­tion.]  The defendant bears the burden of establishing that a substantial violation of his constitu­tional rights oc­

curred."  
People v. Henderson
, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996).  

The Act provides a three-stage process for adjudication of petitions for postconviction relief.  At the first stage, the trial court should not decide the petition on the merits; in­stead, without input from the State or further pleadings from the defendant, the court should simply determine under section 122-2.1 of the Act if the peti­tion is frivolous or patently without merit.  725 ILCS 5/122-2.1 (West 1992).  If the trial court deter­mines at this first stage that the petition is not frivolous or patent­ly without merit, then at the second stage, the court may appoint counsel to represent an indigent defendant, and counsel will have an oppor­tunity to amend the petition.  The State may also, at this second stage, file a motion to dismiss the peti­tion.  If the State does not file a motion to dismiss or if the trial court denies the State's motion, the court then may con­duct an eviden­tiary hearing on the merits of the petition at the third and final stage.  

To warrant an evidentiary hearing, the defendant's petition must make a substantial showing of a consti­tutional violation.  
People v. Hernandez
, 298 Ill. App. 3d 36, 39, 697 N.E.2d 1213, 1215 (1998); see also 
Henderson
, 171 Ill. 2d at 140, 662 N.E.2d at 1296 ("[D]efendant is not entitled to an eviden­tiary hearing on his post[]conviction petition as a matter of right.  [Citation.]  Instead, the factual allegations contained in the petition, supported where necessary by the trial record and affidavits, must first show that a substantial constitutional violation occurred").  Because the trial court's decision to deny an eviden­tia­ry hearing is essentially a legal one, a review­ing court does not defer to the trial court's decision, but instead reviews the matter 
de
 
novo
.  
People v. Coleman
, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998).  However, if the trial court con­ducts an eviden­tiary hearing on the defendant's postconviction peti­tion, a reviewing court will not reverse the trial court's deci­sion unless it was manifestly erroneous.  
People v. Griffin
, 109 Ill. 2d 293, 303, 487 N.E.2d 599, 603 (1985).  A decision is manifest­ly erroneous only if it contains error that is "clearly evident, plain, and indisput­able."  
People v. Ruiz
, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997).  

B. Anonymous Note Found in Juror's Notepad

Defendant first argues that the trial court erred by dismissing without an evidentiary hearing defendant's claim that he was denied a fair trial because a juror re­ceived an "unau­tho­rized communica­tion" during trial.  We disagree. 

In his amended postconviction petition, defen­dant alleged that juror miscon­duct oc­curred when one juror found a piece of paper with the word "guilty" hand­writ­ten on it in her juror notepad during defendant's trial and failed to inform the trial court or counsel.  In support of the claim, defendant at­tached the follow­ing affidavit from juror Becky Ehrlich:

"I served as the jury foreman in [defendant's] trial in 1989.  This affidavit will briefly relate something that happened to me one day during the trial.

Each juror was given a note[]pad for taking notes during the trial.  One day before the trial proceedings when I received my note[]pad, I noticed a piece of paper stick­ing out of the side of the note[]pad.  I had never noticed it before.  I pulled out the piece of paper and unfolded it, and it had one word written in another person's hand­writing; the word 'guilty.'  I did not write that word[] and was very surprised and dis­turbed to see this.

The note was written on the same kind of paper as my note[]pad.  After I saw the note, I essentially forgot about it until recently.  I never mentioned this to anyone else during the trial.  No other jurors mentioned receiv­

ing any similar notes to me, and I never saw any such notes in note[]pads of other jurors.  I do not believe this incident affected the verdicts I later gave in the case.  This concludes my statement."   

In 
People v. Harris
, 123 Ill. 2d 113, 132-33, 526 N.E.2d 335, 342 (1988), the supreme court set forth the law con­cerning extra-record communication with jurors:

"It is well settled in Illinois that any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial.  Although this pre­

sumption of prejudice is not conclusive, the burden rests upon the State to establish that such contact with the jurors was harmless to the defendant.  [Citations.]  
A
 
verdict
 
will
 
not
 
be
 
set
 
aside
 
where
 
it
 
is
 
obvious
 
that
 
no
 
prejudice
 
resulted
 
from
 
a
 
communication
 
to
 
the
 
jury
, either by the court or by third persons outside the presence of the defen­dant."  (Emphasis added.)

Reviewing the allegations set forth in defendant's amended postconviction petition and Ehrlich's affida­vit in support thereof, we conclude that the allegations were not sufficient to make a substantial showing of a constitutional violation and to require an evidentiary hearing.  See 
Henderson
, 171 Ill. 2d at 140, 662 N.E.2d at 1296.  This record shows that Ehrlich's seeing the "guilty" note simply did not preju­dice defendant such that he was denied his right to a fair trial.  Thus, we hold that the trial court did not err by dis­missing without an eviden­tiary hearing defendant's claim that he was denied a fair trial when Ehrlich re­

ceived an "unau­tho­rized communica­tion" during trial.      

In so holding, we reject defendant's contention that 
People v. Jones
, 105 Ill. 2d 342, 475 N.E.2d 832 (1985), is analogous to the present case.  In 
Jones
, after the conclusion of the defendant's case, but before rebuttal, a juror brought to the jury room two copies of a racial "joke," which contained deni­

grating racist comments insulting to black people.  The defendant in 
Jones
 was black, and the jury was all white.  The trial court excused the juror who brought the racist material, but found no prejudice even though three of the other jurors on the panel had seen the material.  On appeal, the supreme court reversed, stating, "[T]here are circum­stances which create `such a proba­bility that prejudice will result that [the trial] is deemed inherently lacking in due process.'  [Citation.]  Such circum­stances are present here."  
Jones
, 105 Ill. 2d at 352, 475 N.E.2d at 836.

This case, however, does not present the same situation as in 
Jones
.  Here, Ehrlich did not inform any other juror of the "guilty" note, did not see any other jurors receive such a note, and stated that seeing the note did not affect the ver­dicts she rendered at defendant's trial.  These circum­stances do not "create `such a probability that preju­dice will result that [the trial] is deemed inherently lacking in due process."' [
Jones
, 105 Ill. 2d at 352, 475 N.E.2d at 836.]"  See 
People v. Mitchell
, 152 Ill. 2d 274, 342, 604 N.E.2d 877, 910 (1992) (situation unlike 
Jones
 where (1) juror was not sure if the defendant's mother's comment was directed at her; (2) juror did not tell other jurors of possible comment until jurors had decided on death sentence; and (3) juror stated that the comment did not affect her voting to sentence defendant to death).    

C.  Defendant's Claims of Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are judged under the now familiar standard set forth by the United States Supreme Court in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  To establish ineffective assistance of counsel, a defendant must first demonstrate that his defense counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaran­

teed the defendant by the [s]ixth [a]mendment."  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  In so doing, a defendant must overcome the strong presump­tion that the chal­

lenged action or inaction of counsel was the product of sound trial strategy and not of incompetence.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.  Second, a defendant must demon­strate a reasonable probability that, but for defense counsel's deficient perfor­mance, the result of the proceeding would have been differ­ent.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  Both prongs of the 
Strickland
 test must be satisfied before a defendant can prevail on a claim of ineffec­

tive assistance of counsel.  "Courts, however, may resolve ineffective­ness claims under the two-part 
Strickland
 test by reaching only the prejudice compo­nent, for lack of prejudice renders irrelevant the issue of counsel's performance."  
Coleman
, 183 Ill. 2d at 397-98, 701 N.E.2d at 1079.

1.  
The Plea Offer

Defendant next argues that the trial court erred by denying his amended postconviction petition because he received inef­fec­tive assistance of trial counsel when Beckett (1) failed to advise defendant of the potential consequences of rejecting the State's plea offer, including that defendant faced a minimum of 30 years in prison if convicted of controlled substances traf­fick­ing, and (2) usurped defendant's right to choose whether to accept the plea offer.  We conclude that defendant has for­feit­ed this issue. 

Defendant failed to raise and argue this issue in either his original or amended postconviction petition.  Pur­su­ant to section 122-3 of the Act, any claim of sub­stan­tial denial of constitu­tional rights not raised in the original or amended petition is forfeit­ed.  725 ILCS 5/122-3 (West 1996); see 
People v. Brisbon
, 164 Ill. 2d 236, 258, 647 N.E.2d 935, 945 (1995).   

In addition, we reject defendant's contention that the trial court erred by excluding defendant's proffered testimony regard­ing Beckett's discussions with defendant concerning the State's plea offer.  We have reviewed the transcript of the evidentiary hearing, and it appears that the trial court exclud­ed that testimony because the court properly deter­mined that it was irrele­vant to the remain­ing claims of ineffec­tive assis­tance of counsel in defendant's amended peti­tion.     

Moreover, assuming that defendant had not for­feited this issue, we nonetheless conclude that on the evidence present­ed--even including the testi­mony regarding the State's plea offer, which was presented during defendant's offers of proof--the trial court's denial of the amended postconviction petition was not mani­fest­ly errone­ous.  Defen­dant present­ed no evidence that he had suf­fered any preju­dice from Beckett's alleged defi­cient perfor­mance during discus­sions with defen­dant concerning the plea offer.  Neither defen­dant, his parents, nor Beckett testi­fied that defen­dant would have accepted the State's offer to allow a guilty plea to a Class 4 felony even if defen­dant had known the minimum and maximum penalties for the three offens­es with which he was charged.  See 
People v. Curry
, 178 Ill. 2d 509, 531, 687 N.E.2d 877, 888 (1997) ("[T]o establish prejudice, defen­dant must demon­strate that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer"); see also 
People v. Jones
, 174 Ill. App. 3d 794, 799, 529 N.E.2d 66, 70 (1988) (no any actual preju­dice estab­lished where the defen­dant never testified he would have accepted State's offer to recommend 30 years' impris­

onment even if he had known of possi­bility of an extended term).  We also note that, based upon the evi­dence pre­sent­ed, the trial court reason­ably could have found that it was defen­dan­t himself--

not Beckett--who ulti­mate­ly made the deci­sion not to accept the State's plea offer.    

2.  
Defendant's Decision To Testify at Trial

Last, defendant argues that the trial court erred by denying his amended postconviction petition because he received inef­fec­tive assistance of trial counsel when Beckett allegedly usurped defendant's constitutional right to choose whether to testify in his own behalf at trial.  We disagree.

A defendant's right to testify at trial is a fundamen­tal constitutional right, as is his right to choose not to testi­fy.  
People v. Madej
, 177 Ill. 2d 116, 145-46, 685 N.E.2d 908, 923 (1997); see 
Rock v. Arkansas
, 483 U.S. 44, 51, 97 L. Ed. 2d 37, 46, 107 S. Ct. 2704, 2708 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Consti­tu­tion").  The decision whether to testify ultimately rests with the defendant (
Madej
, 177 Ill. 2d at 146, 685 N.E.2d at 923); however, the defen­dant should make that decision with the advice of trial counsel (
People v. Smith
, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997)). 

The evidence regarding defendant's claim that Beckett usurped defen­dant's right to choose whether to testify was con­

flict­ing, and the trial court re­solved the conflict against defendant.  In so concluding, the court stated, in rele­vant part, as follows: 

"[Beckett] indicated in his testimony that he ad­vised [defendant] that he did not have to tes­ti­fy.  I don't know that he used the word[s] that he had a right not to testify.  I be­lieve the [d]efendant understood that.  The [d]efendant in this case is unlike many of the defendants that I have had an occasion to participate or preside over in criminal tri­

als.  This is a defendant who is very intel­

ligent, who did very well academically at the university, and in fact graduated, if I re­call correctly, about two weeks prior to the sen­

tencing hear­ing with a degree ***.

Admittedly, [defendant] is not knowl­edge­

able in the criminal trial strategy, but unlike a vast majority of criminal defen­dants, be­cause of [defendant's] intellect, because of his abil­ity to communicate, he was clearly more able to understand and appreci­ate the advice of counsel and to participate in the develop­ment of the strategy for the trial.

I believe on the basis of the testimony that the [c]ourt has heard *** that it is clear that the [d]efendant, the [p]etitioner in this cause, has failed to show that Mr. Beckett [was] ineffective in providing [de­

fendant] appro­priate assistance during the trial of this case."  

Reviewing the record before us in accordance with the appropriate standard of review, we conclude that the trial court's finding that defendant's decision to testify was ulti­mately defendant's own choice was not manifestly erroneous.  Thus, we hold that the court did not err by denying defendant's amended postconviction petition. 

In so holding, we note that because the decision whether to testify at trial lies ulti­mate­ly with a defendant, issues involving how that decision was made lurk--like an unex­plod­ed bomb --in every case result­ing in a convic­tion.  As the supreme court noted in 
People v. Brown
, 54 Ill. 2d 21, 24, 294 N.E.2d 285, 287 (1973), "in every case in which the issue is raised, the lawyer's advice will in retro­spect appear to the defendant to have been bad advice."  Thus, convicted defendants who testified on their own behalf at trial often will later claim that doing so was not their person­al choice and their trial counsel forced them to testify.  On the other hand, defen­dants who did not testify at trial often will later claim that they really wanted to testify but their trial counsel prevented them from doing so.

To defuse this explosive situation, we urge trial courts 
in
 
every
 
criminal
 
case
 to take the few seconds needed, after the State has rested its case in chief and before the presentation of the defense case, to admon­ish the defen­dant person­ally that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after con­sult­ing with counsel.  Trial courts should emphasize to the defen­dant that whatever trial counsel's advice on this point may be, counsel cannot force the defen­dant to testi­fy, nor can counsel prevent the defendant from testifying.  For good mea­sure, the court should once again inquire of the defen­dant before he testifies (or the defense rests without his testimony) to ensure that his decision about this matter was his alone and not co­erced.  

Taking a few seconds to so admon­ish the defen­dant would insu­late the record from postconviction attacks like those in the present case.  Here, it is fortunate that Beckett under­stood that a defendant's decision whether to testify lies ulti­mately with the defen­dant.  Howev­er, the concept is a rela­tively new one, and not all criminal defense attorneys may be as famil­iar with it as Beckett.  

One can easily imagine a postconviction petition in which the convicted defendant alleges that his trial counsel usurped the defendant's right to choose whether to testify and, at the hearing on the petition, trial counsel concedes that the defendant's allegation is true.  Under these circumstances, the underlying conviction is in serious jeopardy.  However, trial courts can make this scenario virtually impossible by admon­ishing defen­dants as we now urge.   

We acknowledge that in 
Smith
, 176 Ill. 2d at 235, 680 N.E.2d at 303, the supreme court held that "the trial court is not required to advise a defendant of his right to testify, to inquire whether he knowingly and intel­li­gently waived that right, or to set of record defendant's deci­sion on this matter."  However, in a footnote to 
Smith
, which involved a direct appeal, the court stated that it was not implying "that a defendant is no longer free to bring a post[]conviction chal­lenge based on a denial of the right to testify."  
Smith
, 176 Ill. 2d at 236 n.1, 680 N.E.2d at 303 n.1.  Thus, although the supreme court in 
Smith
 held that the trial court did not err by failing to admonish the defendant about his right to testify, it simultaneously acknowledged that the very conviction it was upholding was subject to collateral attack.  Nothing in 
Smith
 suggests that a trial court would err if, in the exer­cise of its sound discre­tion, it chose to admonish criminal defen­dants in the manner we now urge.  

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.