# Illinois Official Reports

## Appellate Court

---

### *People v. Morris*, 2014 IL App (1st) 130152

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES MORRIS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0152 |
| Filed | July 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for having "actual physical control" of a car while under the influence of alcohol and felony driving while his license was suspended or revoked were upheld over his contentions that the State did not prove beyond a reasonable doubt that he was in actual physical control of the car or under the influence of alcohol, that the phrase "actual physical control" was unconstitutionally vague as applied to him, that his counsel was ineffective, and that he was improperly classified as a Class X felon, since the evidence showed defendant was in the driver's seat slumped over the steering wheel with the keys to the car in his right hand, a rational trier of fact could have found he was in control of the car, his eyes were bloodshot, he smelled of alcohol, and his performance on one sobriety test indicated he was intoxicated, the record did not sustain his claim that his counsel was ineffective, and there was no improper double enhancement involved in elevating defendant's sentence to a Class X felony. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-9456; the Hon. Kevin M. Sheehan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael A. Ficaro and Maura M. McIntyre, both of Ungaretti & Harris LLP, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Monique Patton, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1    At around two o'clock in the morning, a Chicago police officer found defendant James Morris passed out in the front seat of a parked car, the ignition off, the driver's side door open, and keys in his right hand. Morris was charged with multiple counts of "actual physical control" of the car while under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2012)) and felony driving with a suspended or revoked driver's license (625 ILCS 5/6-303(a) (West 2012)). Convicted after a bench trial, Morris received eight years in prison.

¶ 2    Morris raises three grounds for reversing his convictions: (1) the State failed to prove beyond a reasonable doubt that he was in actual physical control of the vehicle or under the influence of alcohol; (2) the phrase "actual physical control" in sections 11-501(a)(2) and 6-303(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(a)(2), 6-303(a) (West 2012)) is unconstitutionally vague and ambiguous as applied to him; and (3) his counsel's performance denied him his constitutional right to effective counsel. Morris also asserts his status as a Class X felon was improper and asks for resentencing.

¶ 3    We affirm Morris's conviction and sentence. First, the State proved beyond a reasonable doubt that Morris was under the influence of alcohol and had "actual physical control" of the car under the factors our courts consider and neither Morris's intent nor the fact that the car was parked and the ignition off defines or explains actual physical control. In addition, regarding "actual physical control" as unconstitutionally vague and ambiguous as applied to Morris, he has failed to meet his burden of rebutting the presumption of constitutionality and establishing a constitutional violation. Next, none of the arguments that Morris advances in support of his ineffective assistance of counsel claims satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Finally, the trial court properly sentenced Morris and his arguments to the contrary misapprehend his criminal record.

¶ 4                                  BACKGROUND

¶ 5    On April 22, 2012, a Chicago police officer found defendant, James Morris, passed out in the driver's seat of a parked vehicle with keys in his hand. Morris, who smelled of alcohol, could not produce any identification or an insurance card. A field sobriety test conducted at

the police station indicated Morris was impaired. Consequently, he was arrested and charged by indictment with 5 counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)) and 14 counts of felony driving while driver's license is suspended or revoked (625 ILCS 5/6-303(a) (West 2012)). Before trial, the State elected to proceed on the first seven counts of the indictment–one count of aggravated driving under the influence of alcohol and six counts of felony driving while driver's license is suspended or revoked–and dismissed the remaining counts.

¶ 6        The evidence established that on April 22, 2012, at about 1:55 a.m., Chicago police officer Rick Nigro, while responding to a call of shots fired in the area of the 4800 block of North Kostner, came upon a poorly parked car with its driver's door open. On investigation, Nigro saw Morris slumped over the steering wheel, passed out. Nigro testified he did not see Morris driving the car; in Morris's right hand were the car keys. A bag of groceries sat on the curb. Nigro woke Morris up and noticed Morris had bloodshot eyes and reeked of alcohol. Morris could not produce identification or proof of insurance. Nigro, an 18-year veteran of the department who had made dozens of arrests for driving under the influence, considered Morris to be highly intoxicated and called another police officer to take Morris to the police station.

¶ 7        At the station, Officer John Kaporis met with Morris. Kaporis testified he has been a certified Breathalyzer technician for 10 years and gets recertified every 3 years. Kaporis performed only the horizontal gaze nystagmus sobriety test (HGN), because Morris told him he had problems with his knees, and Kaporis did not want to exacerbate the problem. Kaporis explained that the HGN test is one of three standardized field sobriety tests the police conduct on DUI suspects. An officer administers the test by holding a stimulus, like a pen, about 15 inches from the subject's face. The subject focuses on the stimulus and follows it with his or her eyes as it is moved slowly to the side and back to the center. The test checks for smooth, continuous movement of the eyes and nystagmus (involuntary jerkiness of the eyes, a sign of impairment). Kaporis performed three sweeps on Morris and observed "distinct nystagmus, *** onset nystagmus, *** involuntary jerkiness of the eyes on all three and vertical nystagmus as well." After administering the HGN test, Kaporis concluded Morris showed signs of impairment. Kaporis asked Morris if he wanted to take a Breathalyzer test. Morris refused. Kaporis noticed Morris had red, bloodshot eyes and that his breath emitted a strong odor of alcohol.

¶ 8        The parties stipulated to two prior DUI convictions–one in Chicago in 2010 and another from Wisconsin in 1987. Defense counsel moved for a directed finding, which the trial court denied.

¶ 9        After the State rested, Morris called one witness, Jackie Summerlin, who testified that she and Morris were apartment-sitting for a friend that day, and at about 1:30 a.m., she drove her car to the grocery store, stopped for gas and groceries, and went to the liquor store and bought two six-packs of beer and a small bottle of whiskey. On returning to the apartment, Summerlin parked about a block away, took out some beer and the bottle of whiskey and went upstairs. She asked Morris to go out to the car for the rest of the items, which she said were in the front passenger seat. Summerlin said she gave Morris the keys and went to bed.

¶ 10        Summerlin testified she woke up a few hours later and realized Morris and the car were gone. She said she did not call the police because she did not want to get Morris in any trouble if he had taken the car. She later learned that Morris had been arrested and her car

impounded. Summerlin admitted that before she went to the liquor store, she had been drinking. A Cook County investigator went to speak with Summerlin, but, after the investigator told her she did not have to speak to him if she did not want to, she refused to answer any questions.

¶ 11    The trial court found Morris guilty of aggravated driving under the influence of alcohol and felony driving on a suspended or revoked license. In reaching its verdict, the trial court reviewed the evidence, noting that the HGN test indicated impairment, both police officers thought Morris was under the influence of alcohol, Morris refused a Breathalyzer test, and had two prior DUI convictions. As for defendant's case, the court stated, "Based on the totality of the circumstances, the totality of the evidence, the court does find a bit of bias on Ms. Summerland's [*sic*] part ***. Some of her testimony strains credibility: Not calling the police when the person she sent down to get the remaining groceries didn't come back. She fell asleep or passed out. She admits drinking. The court puts little credence on her testimony for the foregoing reasoning." The court concluded the State proved the elements of aggravated DUI and driving on a suspended or revoked license beyond a reasonable doubt.

¶ 12    Morris filed a motion for a new trial arguing, in part, that he was not proven guilty beyond a reasonable doubt because the State failed to present credible evidence that he drove the vehicle or had the intention to drive it. The trial court denied the motion. During the sentencing hearing, the circuit court determined Morris was Class X eligible based on his prior Class 2 felony convictions and sentenced him to eight years in prison. Morris filed a motion to reconsider his sentence, which the trial court denied. That same day, Morris filed a notice of appeal.

¶ 13                                  ANALYSIS
¶ 14                      Evidence of Guilt Beyond a Reasonable Doubt
¶ 15    Morris first contends the State failed to prove beyond a reasonable doubt that he was in "actual physical control" of a vehicle while under the influence of alcohol. Morris does not contend the State failed to prove beyond a reasonable doubt that he was driving or "in actual physical control" of a motor vehicle at a time when his driver's license was revoked or suspended as prohibited by section 6-303(a) of the Code (625 ILCS 5/6-303(a) (West 2012)), so that part of the conviction will not be addressed here.

¶ 16    When reviewing a conviction to determine whether the prosecution has satisfied the reasonable doubt standard, the court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 279 (2004). "In conducting this inquiry, the reviewing court must not retry the defendant." *Id*. This standard recognizes the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from it. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). A criminal conviction will be reversed only if the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *Id*.

¶ 17    Section 11-501(a) (2) of the Code provides that an individual "shall not drive or be in actual physical control of any vehicle within this State while under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2012). Accordingly, the prosecution was required to establish that Morris was "in actual physical control" of the car and intoxicated. See *People*

*v. Long*, 316 Ill. App. 3d 919, 926 (2000). "A person need not drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control." *City of Naperville v. Watson*, 175 Ill. 2d 399, 402 (1997). The issue of actual physical control is determined on a case-by-case basis, giving consideration to whether the defendant: (1) possessed the ignition key; (2) had the physical capability to operate the vehicle; (3) was sitting in the driver's seat; and (4) was alone with the doors locked. *People v. Slinkard*, 362 Ill. App. 3d 855, 859 (2005). These factors provide a guideline to determine whether the defendant had actual physical control of the vehicle; the list is neither exhaustive, nor is the absence of one individual factor controlling. *Id*.

¶ 18 Under the factors, the evidence at trial established that Morris was in "actual physical control" of the vehicle. First, Morris does not dispute that Officer Nigro found him in the driver's seat of the vehicle, slumped over the steering wheel. Just because a defendant is asleep in a vehicle does not mean he or she is not in actual physical control of it. *Watson*, 175 Ill. 2d at 402 (defendant found asleep in parked vehicle with engine running satisfies actual physical control); *People v. Brown*, 175 Ill. App. 3d 676, 677 (1988) (evidence defendant was in driver's seat asleep and slumped over steering wheel with keys in ignition but engine not running sufficient to establish actual physical control of vehicle for purposes of driving under the influence statute). Morris acknowledges he was holding keys in his right hand. (His contention that the State failed to prove he was capable of starting the car with those keys, which he suggests could have been apartment keys, contradicts the testimony of his own witness, Morris's friend, Summerlin, who said she gave Morris the car keys so he could retrieve the groceries she left in the car.)

¶ 19 While it is true, as Morris asserts, that there was no testimony he was alone in the car, there also was no evidence anyone else was in the car or even in the vicinity. It is also true that Nigro testified that when he approached the car he saw the driver's side door open. Morris could easily have woken up, closed the door, and driven away. Hence, looking at the evidence in the light most favorable to the State, a rational trier of fact could find that Morris, alone in the driver's seat with keys in his right hand, was in actual physical control of the car.

¶ 20 Morris next contends the State failed to establish beyond a reasonable doubt that he was under the influence of alcohol. "A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000). Intoxication is a question for the trier of fact to resolve on the basis of having assessed the credibility of the witnesses and the sufficiency of the evidence. *People v. Janik*, 127 Ill. 2d 390, 401 (1989). To find the defendant guilty of driving under the influence, the prosecution must establish that the defendant was under the influence of a drug or alcohol to a degree that renders him or her incapable of driving safely. *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000). Circumstantial evidence alone may suffice to prove a defendant guilty of DUI. *People v. Diaz*, 377 Ill. App. 3d 339, 345 (2007). Where the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary. *People v. Gordon*, 378 Ill. App. 3d 626, 632 (2007). Specifically, testimony that a defendant's breath smelled of alcohol and his or her eyes were glassy and bloodshot is relevant and admissible evidence in a DUI prosecution. *People v. Elliott*, 337 Ill. App. 3d 275, 281 (2003). A defendant's refusal to submit to chemical testing shows a consciousness of guilt. *People v. Garriott*, 253 Ill. App. 3d 1048, 1052 (1993) (refusal to submit to

Breathalyzer test is relevant as circumstantial evidence of defendant's consciousness of guilt).

¶ 21    Officer Nigro testified that when talking to Morris he noticed Morris's bloodshot eyes and "an extremely strong odor of alcohol beverage coming from him." Nigro further testified that in his 18 years as a police officer, he had made dozens of DUI arrests and, based on his professional and personal experience, he thought Morris was under the influence of alcohol.

¶ 22    Officer Kaporis testified to the bloodshot eyes and strong smell of alcohol on Morris's breath, too. Kaporis, who performed an HGN test, testified that Morris showed signs of impairment. But, according to Morris, the State failed to lay a proper foundation for Kaporis's testimony about the results of the HGN test, including evidence of Kaporis's training to be a certified administer of the HGN tests in accordance with standards established by the National Highway Traffic Safety Administration (NHTSA) or that he performed the test on Morris in accordance with NHTSA protocol. We disagree. Kaporis told the trial judge he was trained to conduct field sobriety tests and that the HGN test represented one of the three standard field sobriety tests. Further, even in the absence of the HGN tests results, given the credible testimony from two police officers, along with Morris's refusal to take a Breathalyzer test, which can be evidence of consciousness of guilt, the scientific proof of intoxication was unnecessary to sustain Morris's conviction for driving under the influence of alcohol. *People v. Gordon*, 378 Ill. App. 3d 626, 632 (2007).

¶ 23    Hence, the trial court did not err in finding Morris guilty of aggravated driving under the influence.


¶ 24                            "Actual Physical Control"

¶ 25    Morris argues the phrase "actual physical control" in sections 11-501(a) and 6-303(a) of the Code (625 ILCS 5/11-501(a), 6-303 (West 2012)) is unconstitutionally vague and ambiguous as applied to him. Specifically, Morris insists the Code does not provide sufficient notice as to what constitutes actual physical control and fails to provide a reasonable standard by which an ordinary person can gauge or regulate his or her future conduct. Although Morris did not raise this issue before the trial court, a constitutional challenge to a statute may be raised at any time and we will consider it. See *People v. Bryant*, 128 Ill. 2d 448, 454 (1989).

¶ 26    Courts presume a statute is constitutional. *People v. Cornelius*, 213 Ill. 2d 178, 189 (2004). The party challenging the validity of a statute bears the burden of rebutting the presumption and establishing a constitutional violation. *Id.* "Moreover, ' "it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." [Citations.]' " *Davis v. Brown*, 221 Ill. 2d 435, 442 (2006) (quoting *People v. Inghram*, 118 Ill. 2d 140, 146 (1987), quoting *McKenzie v. Johnson*, 98 Ill. 2d 87, 103 (1983)). We review challenges to a statute's constitutionality *de novo*. *People v. Campbell*, 2014 IL App (1st) 112926, ¶ 54.

¶ 27    A vagueness challenge is rooted in due process and examines whether a statute "give[s] [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (Internal quotation marks omitted.) *People v. Greco*, 204 Ill. 2d 400, 416 (2003). A statute may be unconstitutionally vague if its "terms are so ill-defined

that the ultimate decision as to [its] meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." (Internal quotation marks omitted.) *People v. Boclair*, 202 Ill. 2d 89, 103 (2002). Vagueness challenges to statutes that do not involve the first amendment are examined in light of the particular facts of the case. *Greco*, 204 Ill. 2d at 416. In other words, the party challenging the statute must show the statute did not provide effective notice that his or her conduct was prohibited. *People v. Jihan*, 127 Ill. 2d 379, 385 (1989).

¶ 28    In Illinois, a vehicle need not be moving or the engine running for the driver to be in actual physical control for purposes of driving under the influence. See *Watson*, 175 Ill. 2d 399 (defendant found sleeping across front seat with engine running was in actual physical control); *People v. Davis*, 205 Ill. App. 3d 431, 435 (1990) (defendant found sleeping in backseat with keys in ignition); *People v. Cummings*, 176 Ill. App. 3d 293, 295 (1988) (defendant found sleeping in driver's seat with car engine running). As the supreme court noted in *Watson*, this is in line with the legislative intent of encouraging those who plan to drink to arrange lodging or safe transportation home in advance so that a person who embarks on an evening of drinking with the intention of sleeping in a car does not make the actual decision after his or her judgment and alertness have been impaired. *Watson*, 175 Ill. 2d at 405.

¶ 29    Morris contends that he could not reasonably know that he could be found in actual physical control of the car when passed out in the driver's seat with the keys in his hand and the driver's side door open. We disagree. Although Morris may have not actually known that his conduct constituted actual physical control, ignorance of the law has long been rejected as a defense. *People v. Hollins*, 2012 IL 112754, ¶ 34. The case law establishes that to prevent someone from making the decision to drive a vehicle while lacking clarity of thought due to alcohol consumption, a defendant will be deemed to be in actual physical control when he or she "is behind the steering wheel in the driver's seat with the ignition key and physically capable of starting the engine and moving the vehicle." *People v. Heimann*, 142 Ill. App. 3d 197, 199 (1986). Although Morris may not have been aware that his conduct might be illegal, that alone does not render the statute unconstitutionally vague.

¶ 30                                Ineffective Assistance of Counsel

¶ 31    Morris contends ineffective assistance of counsel due to his attorney's failure (1) to object to the admission of the HGN test; (2) to understand applicable law or form a coherent defense; (3) to hold the State to its burden of proof regarding his prior DUI convictions; (4) to challenge a witness's inconsistent testimony; and (5) to put Morrison the stand in his defense.

¶ 32    To prove ineffective assistance of counsel, the defendant must allege facts showing counsel's representation was both objectively unreasonable and counsel's deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). The defendant bears the burden of demonstrating he received ineffective assistance of counsel. *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003). The deficiency prong requires showing his counsel's performance was so deficient as objectively measured against prevailing professional norms that counsel was "not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). "A decision that involves a matter of trial strategy typically will not sustain a claim of

ineffective representation." (Internal quotation marks omitted.) *People v. Redmond*, 357 Ill. App. 3d 256, 260 (2005). A defendant must overcome a strong presumption that counsel's conduct constituted sound trial strategy and fell within the wide range of reasonable professional assistance. *People v. Jackson*, 205 Ill. 2d 247, 259 (2001). Further, in determining the adequacy of counsel's representation, "a reviewing court will not consider isolated instances of misconduct, but rather the totality of the circumstances." *People v. Lopez*, 371 Ill. App. 3d 920, 929 (2007).

¶ 33    To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." (Internal quotation marks omitted.) *People v. King*, 316 Ill. App. 3d 901, 913 (2000). A reasonable probability sufficiently undermines confidence in the outcome. *Id.* While the defendant must satisfy both prongs to prevail, the reviewing court may analyze the facts under either prong first, and if it deems that the standard for that prong is not satisfied, it need not consider the other prong. *People v. Irvine*, 379 Ill. App. 3d 116, 129-30 (2008).

¶ 34    Morris first asserts his trial counsel provided ineffective assistance by failing to challenge the foundation for the State's admission of the HGN field sobriety test. Although Kaporis testified he is certified to administer field sobriety tests, the record does not reveal testimony that he was trained in administering the HGN test in accordance with the NHTSA manual or that he administered the test according to those guidelines. Morris, however, did not object at trial so the State had no opportunity to lay a proper foundation. But, even if we assume the State would have failed to do so, any error was harmless under the second prong. Morris has not met his burden because even if the HGN test had been excluded for lack of proper foundation, other evidence supported defendant's conviction for DUI. Thus any error in admitting the HGN test was harmless. See *People v. McKown*, 236 Ill. 2d 278, 311 (2010) ("Error will be deemed harmless and a new trial unnecessary when 'the competent evidence in the record establishes the defendant's guilt beyond a reasonable doubt and it can be concluded that retrial without the erroneous admission of the challenged evidence would produce no different result.' " (quoting *People v. Arman*, 131 Ill. 2d 115, 124 (1989)).

¶ 35    As explained earlier, the State produced enough evidence even without the HGN test results to convict Morris of driving under the influence. A court may rely on the observations of a trained police officer in making a judgment about the intoxication level of a defendant. Officers Nigro and Kaporis, who had many years of experience, testified that Morris had a strong odor of alcohol and bloodshot eyes and they thought he was impaired. In addition, Morris refused to take a Breathalyzer, which can be evidence of consciousness of guilt. *People v. Jones*, 214 Ill. 2d 187, 201-02 (2005). This evidence was more than sufficient to find him guilty beyond a reasonable doubt of aggravated DUI. A new trial without evidence of HGN testing would not produce a different result. See also *People v. Graves*, 2012 IL App (4th) 110536, ¶¶ 32-33 (concluding that even if evidence of HGN testing was excluded for lack of foundation, evidence against defendant overwhelmingly proved him guilty beyond a reasonable doubt of aggravated DUI).

¶ 36    Morris next asserts his trial counsel was ineffective for failing to understand the applicable law or form a coherent defense. Specifically, Morris contends his attorney did not understand the distinction between driving a vehicle and being in actual physical control of a vehicle, both of which are prohibited under the Illinois Vehicle Code. Thus, maintains Morris, his attorney failed to argue he was not in actual physical control of the vehicle

because he was sleeping, the driver's side door was open, and the keys in his hand were not in the ignition or even keys for that vehicle's ignition.

¶ 37    "A weak or insufficient defense does not indicate ineffectiveness of counsel in a case where a defendant has no defense." (Internal quotation marks omitted.) *People v. Nieves*, 192 Ill. 2d 487, 496 (2002). As noted, the State presented evidence showing Morris was in actual physical control of the vehicle and was under the influence of alcohol. Thus, it appears Morris's trial counsel hoped to show Jackie Summerlin, Morris's friend, drove and parked the vehicle slightly askew and that Morris went to the vehicle to pick up groceries only and never drove the car or intended to do so. His lawyer presented testimony from Summerlin that she asked Morris to get the groceries from the car and established through cross-examination of Nigro that the bag of groceries was found on the curb on the driver's side of the vehicle. Although, as Morris asserts, intent to drive is not necessary to show actual physical control, his attorney reasonably determined that his best defense was to argue that the legislature did not intend for the Code to punish someone like Morris who did not drive or ever have the intent to drive but simply went to get something out of a vehicle. This creative argument does not constitute deficient performance, where defense counsel cross-examined the State's witnesses, presented a witness in support of his defense, and vigorously argued that Morris should be found "not guilty."

¶ 38    Moreover, we cannot find that a reasonable probability exists that had counsel not pursued this strategy Morris would have been acquitted. The State presented sufficient evidence that Morris was in actual physical control of the vehicle and that he was intoxicated. Thus, he failed to establish any prejudice by the strategy his attorney pursued.

¶ 39    Morris contends his trial counsel should not have stipulated to his two prior DUI convictions–one in Illinois and one in Wisconsin–which allowed the trial court to punish him for a Class 2 felony rather than as a misdemeanor. Morris asserts the only evidence the State was able to provide the court regarding the Wisconsin conviction was a ticket number and an approximate date of the violation. He contends the State did not have a certified copy or any other record of the conviction and his attorney should have forced the State to prove up the conviction. Because the State would not have been able to do so, Morris says he was prejudiced by a longer prison sentence as a Class 2 felon.

¶ 40    The mere use of a stipulation does not demonstrate ineffective assistance of counsel. *People v. Smith*, 326 Ill. App. 3d 831, 851 (2001). An incorrect or erroneous stipulation may establish the first prong of the *Strickland* test. See *People v. Coleman*, 301 Ill. App. 3d 37, 47 (1998). But to establish that counsel was ineffective for entering into a stipulation, a defendant must also satisfy the prejudice prong of *Strickland* and overcome the strong presumption that counsel's actions arose from trial strategy. *Id*.

¶ 41    Trial counsel's stipulations were not incorrect or erroneous. Trial counsel may have considered the stipulations to be preferable to the possibility of detailed description of the circumstances of Morris's two DUI convictions. Moreover, Morris's suggestion that because the State only provided the ticket number and an approximate date of the Wisconsin conviction, it would not have been able to provide a certified copy of the conviction into evidence is conjecture. At the close of the State's case, the trial court adjourned to give the State time to provide the court with the case number of Morris's Wisconsin conviction before the stipulations could be entered. When the case resumed almost three months later, the court only asked the State for the ticket number and date of the Wisconsin conviction. That does

not mean the State did not have a certified copy or other evidence of Morris's conviction. Thus, because Morris cannot overcome the strong presumption that the stipulation was a reasonable part of counsel's trial strategy, he fails to establish his counsel's performance was deficient.

¶ 42     Morris next contends his trial counsel was ineffective for failing to impeach Officer Nigro about his supposed inconsistent testimony regarding the location of the grocery bag and key at the time of the arrest. Morris asserts Nigro testified that Morris was holding keys in his right hand and on cross-examination he testified the grocery bag was found on the curb on the driver's side of the car. But the arrest report did not mention the keys and stated that the grocery bag was "laying on the street." Morris suggests that cross-examination on these two issues may have cast doubt on Nigro's credibility as well as essential factor in the crime–the location of the keys. Again, we disagree.

¶ 43     First, it is evident from the record that defense counsel wanted to establish the existence of the grocery bag to corroborate Summerlin's testimony that she asked Morris to go retrieve groceries from the car. Cross-examining Nigro about the exact location of the bag would have done nothing to support that theory. Thus, defense counsel's failure neither constitutes deficient performance nor prejudice to defendant.

¶ 44     Morris also fails to establish that his trial counsel was ineffective for failing to cross-examine Nigro about the lack of detail in the arrest report regarding the location of the keys. In *People v. Vasquez*, 368 Ill. App. 3d 241 (2006), the defendant was convicted of aggravated unlawful use of a weapon by a felon after he was observed by a police officer picking up a gun and keeping it. *Id.* at 245. The defendant asserted ineffective assistance because his counsel did not question the police officers about missing details in the arrest report. *Id.* at 256. The arrest report did not include details regarding the officer's observation that someone else gave the defendant the gun, one of the officers asking defendant to " 'come here' " and a struggle ensuing between an officer and defendant. *Id.* The appellate court disagreed and stated that the lack of detail "did not render the officers' testimony inconsistent, and defense counsel was not ineffective for failing to impeach the officers about the absent details." *Id.*

¶ 45     Similarly, the lack of details in the arrest report about the keys was not a basis for impeaching the officers. Further, part of defense counsel's strategy, as evidenced by Summerlin's testimony, was to explain why Morris went to the car–not to drive anywhere but to pick up the groceries Summerlin left in the car. Cross-examining Nigro as to that missing detail on the arrest report would not have helped to support that theory of the case. Thus, neither prong of the *Strickland* test has been satisfied.

¶ 46     Lastly, Morris argues his counsel improperly precluded him from testifying on his own behalf. He asserts he should have taken the stand because other than Officer Nigro, Morris was the only person at the scene, and thus, presumably could have offered a different version of the events that evening. He also, he asserts, could have corroborated the testimony of Summerlin that the only reason he went to the car was to retrieve groceries.

¶ 47     The decision whether to testify on one's own behalf belongs to the defendant (*People v. Thompkins*, 161 Ill. 2d 148, 177 (1994)), although this decision should be made with the advice of counsel. *People v. Smith*, 176 Ill. 2d 217, 235 (1997). Advice not to testify is a matter of trial strategy and does not constitute ineffective assistance of counsel unless evidence suggests that counsel refused to allow the defendant to testify. *People v. DeRossett*,

262 Ill. App. 3d 541, 546 (1994). Morris presents no evidence and the record does not support a finding that his attorney refused to allow him to testify.

¶ 48    Morris also suggests the trial court erred in failing to admonish him of his right to testify. Our supreme court has firmly established that a defendant seeking reversal of his conviction on the basis that he was precluded from testifying at trial must demonstrate that he "contemporaneously asserted his right to testify by informing the trial court that he wished to do so." *Smith*, 176 Ill. 2d at 234. Further, our supreme court determined that the trial court is not required "to advise a defendant of his right to testify, to inquire whether he knowingly and intelligently waived that right" or to ensure that the record establishes defendant's waiver of that right. *Id*. at 235. Nothing in the record shows Morris alerted the trial court that he wanted to testify. Thus, there was no error to satisfy the first prong of the *Strickland* test in the absence of evidence that trial counsel refused to allow Morris to testify or that Morris was denied the opportunity to testify after informing the trial court that he wished to do so.

¶ 49                    Alleged Double Enhancement of Sentence

¶ 50    Morris's final contention is that he is entitled to a new sentencing hearing because the trial court improperly relied on a single factor–his two prior DUI convictions–to elevate his aggravated DUI to a Class 2 felony and to enhance his sentence as a Class X felon resulting in a double enhancement. Morris acknowledges he forfeited the issue but asks the court to review it as plain error. Under the narrow and limited plain error exception to the general forfeiture rule, a reviewing court may consider forfeited errors where the evidence was closely balanced or where the error was so egregious that defendant was deprived of a substantial right and thus a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). The burden of persuasion remains with the defendant, and the first step in plain error review is to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). For the reasons that follow, we find none to excuse Morris's forfeiture of this issue.

¶ 51    Generally, a circuit court may not use a factor implicit in the offense for which the defendant was convicted as an aggravating factor at sentencing for that offense. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing "a harsher sentence than might otherwise have been imposed." *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). Dual use of a single factor is referred to as a "double enhancement." *Phelps*, 211 Ill. 2d at 12. The double-enhancement rule is one of statutory construction and the standard of review is *de novo*. *Id*.

¶ 52    A third aggravated driving under the influence of alcohol violation under section 11-501(d)(1)(A) of the Code provides is a Class 2 felony. 625 ILCS 5/11-501(d)(2)(I) (West 2012). Morris argues the circuit court relied on his two prior DUI convictions to elevate this aggravated DUI from a misdemeanor to a Class 2 felony under section 11-501(d). He contends the circuit court then relied on those same two DUI convictions to sentence him as a Class X felon under section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2012)), the applicable sentencing enhancement statute. Section 5-4.5-95 provides, in part, "[w]hen a defendant *** is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state *** of an offense that contains the same elements as an offense now *** classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that

defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2012). Morris insists the circuit court improperly used his prior DUI convictions as a double enhancement–to elevate his aggravated DUI from a misdemeanor to a Class 2 felony and then to sentence him as a Class X felon.

¶ 53        For support, Morris relies on *People v. Griham*, 399 Ill. App. 3d 1169 (2010). In *Griham*, the defendant was charged with unlawful possession of a weapon by a felon. Defendant argued the State used the same 1996 conviction under the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq*. (West 1996)) to elevate his unlawful possession of a weapon charge to a felony and to enhance his sentence as a Class X offender. *Griham*, 399 Ill. App. 3d at 1171. The appellate court agreed, holding that because the State chose to meet an essential element of the offense–that defendant was a felon–by establishing he had a felony conviction under the Controlled Substances Act, it could not use the same conviction to qualify him for Class X sentencing. *Id*. at 1172. The court rejected the State's argument that the defendant's 1993 felony conviction for unlawful possession of a weapon was sufficient to elevate his current conviction to a Class 2 felony because the State failed to present any evidence to the jury regarding that conviction. *Id*. Thus, the court vacated defendant's Class X felony and remanded for proper sentencing. *Id*. at 1173.

¶ 54        Unlike Griham, Morris has two prior DUI convictions, which were used to elevate his aggravated DUI to a Class 2, but the State also presented evidence at the sentencing hearing that he had prior convictions for Class 2 burglary in 1995, Class 1 manufacturing and delivery conviction in 1985, and 18 convictions for driving while his driver's license, permit or privilege to operate a motor vehicle was suspended or revoked, which upon the fifteenth conviction became a Class 2 felony under section 6-303(d-5) of the Code. 625 ILCS 5/6-303(d-5) (West 2012). As the trial court noted, the 1985 and 1995 convictions (and not the prior DUI convictions) qualified him as Class X eligible. Thus, no improper double enhancement occurred, and there are no grounds for vacating Morris's sentence.

¶ 55        We affirm Morris's conviction and sentence.

¶ 56        Affirmed.