2026 IL App (1st) 230538

No. 1-23-0538

May 1, 2026

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 18 CR 12771 |
| | ) | |
| KEVIN LANIGAN, | ) | The Honorable |
| | ) | Michael J. Hood, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justices Mikva & Wilson concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Kevin Lanigan was convicted after a bench trial of aggravated driving under

the influence of alcohol. The bench trial had only one witness, who was the arresting officer.

Defendant was sentenced to two years of probation and ordered to comply with treatment

recommendations after a drug and alcohol evaluation. On appeal, defendant claims (1) that the

State relied on body-worn camera footage that was allegedly not admitted into evidence and

(2) that the evidence at trial was insufficient. For the following reasons, we find (1) that the trial court did admit the officer's body-worn camera footage into evidence during the bench trial and (2) that the testimony and the body-worn camera footage were more than sufficient evidence of the charged offense.

¶ 2                                BACKGROUND

¶ 3        Defendant was charged in a two-count information. The first count charged that on August 10, 2018, he was in actual physical control of a vehicle while under the influence of alcohol and that this occurred during a period in which his driving privileges were suspended. On appeal, defendant does not dispute the fact that his license was suspended. The second count charged that on August 10, 2018, he was in actual physical control of a vehicle while under the influence of alcohol and while not in possession of a driver's license. In the trial court, defendant was represented by private counsel.

¶ 4        After various delays and substitutions of counsel, on September 8, 2022, defendant waived his right to a jury trial, and the case proceeded to a bench trial. Officer Trysha Solis testified that she had been a Chicago police officer for 8½ years. In the early morning hours of August 10, 2018, she was on routine patrol with her partner, Office Monic Reveles, in a marked Chicago police vehicle. At 1:40 a.m., they were waved down by a citizen who told them that there was a car stopped near an intersection with a man sleeping in the car. After the officers drove to the location, Officer Solis observed a stopped vehicle with the engine running and a person asleep in the driver's seat. The car was stopped a little bit north of Oak Street, on Orleans Street, with the driver's side window down. Officer Solis testified that there was no reason to be stopped at that time since the lights for Orleans Street were blinking yellow and there was no traffic.

¶ 5 Officer Solis testified that she approached the open driver's side window, where she observed that the driver's eyes were closed and his head was tilted forward with his chin on his chest. After she knocked on the rear window to get his attention, defendant released his foot off the brake, and the car started to move forward. The officers became alarmed and told defendant to stop the car and put it in park, which he did. Defendant seemed surprised to see them, and they identified themselves as officers, although they were also in uniform. Officer Solis asked for his license and insurance, and defendant started "fumbling around." In the end, he handed them his whole wallet. Defendant started trying to exit the car, and he was "finally" able to open the door. Officer Solis noted the smell of alcohol emanating from the inside of the car. When she asked him if he had had any drinks, he responded that he had consumed four drinks. Then she conducted standard field sobriety tests.

¶ 6 Officer Solis testified that she had received training at the Chicago Police Academy regarding how to perform field sobriety tests, which involved both written and practice tests, and she was certified to administer them. At that time on August 10, 2018, it was dark, and the weather was clear with no rain. First, she performed the horizontal gaze nystagmus (HGN) test, where she held a pen four to six inches from his face and moved it from side to side and also up and down, while she looked for an involuntary jerking of the eyes, among other signs. Officer Solis testified that 4 signs are sufficient to indicate alcohol consumption, and defendant indicated 10.

¶ 7 Officer Solis offered defendant the walk-and-turn test, which he declined to perform. Defendant did do the one-leg stand test, and she observed that, when he placed his foot down, "[h]e was swaying." As part of the test, the subject is supposed to count "one thousand one, one thousand two," and so on, until told to stop. In the case at bar, defendant skipped a number

and then stopped counting before Officer Solis told him to stop. Then he restarted and started counting again. During the stop, defendant never indicated that he was unable to perform the tests due to a medical condition or a leg or knee impairment or that he wore glasses or contact lenses. Based upon the tests and her other observations, Officer Solis placed defendant in custody and took him to the police station for processing.

¶ 8       Officer Solis testified that, as part of the processing at the police station, a breathalyzer test was attempted. As part of the test, the subject has to blow into the machine. Officer Solis testified that, in the case at bar, defendant "just blew lightly, [and] didn't listen to the directions that were given." Officer Solis attempted to perform the test three times. She testified that, after three attempts, it is considered a refusal. Officer Solis testified that she had had the opportunity in both her personal life and her professional life to observe individuals who were under the influence of alcohol and that it was her opinion that defendant was driving under the influence of alcohol. Officer Solis explained that her opinion was based on: (1) defendant's "inability to follow simple directions," (2) the tests, and (3) and "hi[s] being in the car with his foot on the pedal at a yellow yield light with it is one o'clock in the morning and no stopped traffic."

¶ 9       Officer Solis testified that both her and her partner were equipped with body-worm cameras and that she had the opportunity to review the footage from both cameras. Since on appeal defendant contends that this exhibit was not admitted, we quote below the remarks surrounding its admission:

> "MR. NEWTON [(ASSISTANT STATE'S ATTORNEY (ASA))]: Judge, if I can have a brief moment. I'm going to mark for identification People's Exhibit No. 2, and this is a file labeled Axon underscore Body Reveles, R-e-v-e-l-e-s.

4

(People's Exhibit No. 2 was marked for identification.)

[ASA]: And Judge, I would ask to strike the words 'for identification' for People's Exhibit No. 2 and leave to publish.

THE COURT: Any objection, [defense counsel]?

MR. WALLIN [(DEFENSE COUNSEL)]: No objection.

THE COURT: There being no objection, the words 'for identification' are stricken. People's Exhibit No. 2, the Reveles body cam, is in. You can publish whatever you want.

[ASA]: Thank you, Judge."

¶ 10    The trial court then described for the record what was initially being shown and stated again the court's approval to publish:

"THE COURT: For the record what I'm seeing is the inside of a CPD vehicle with a computer screen lit up in the middle and the steering wheel to the left.

Is that what you see, [ASA]?

[ASA]: Yes, Your Honor.

THE COURT: And [defense counsel]?

[DEFENSE COUNSEL]: Yes.

THE COURT: [Defendant], you can see the video okay?

THE DEFENDANT: Yes, Judge.

THE COURT: Good to go. Okay. You can publish."

The ASA then played the video, stopping at certain parts to ask Officer Solis to identify the individuals.

¶ 11    On cross examination, Officer Solis testified that she asked defendant where he was coming from, and he replied that he was coming from home and provided a street address. When she first approached defendant's vehicle, the vehicle had its headlights on. At the time, she had no concerns about a medical issue, and she did not call an ambulance. When defendant stated that he had consumed four drinks, she did not ask what type of drinks or when he had consumed them. When defendant exited the vehicle, she detected an odor of alcohol; however, he did not need to hold on to the vehicle to support himself as he exited. During the HGN test, defendant "slightly swayed" but not enough to affect her ability to perform the test. Officer Solis did not ask defendant if he normally wore glasses and acknowledged that an eye condition "may" affect the results of an HGN test. While the test was being performed, three squad cars were in the vicinity with flashing lights. Officer Solis acknowledged that flashing lights could distract a person's eye movement.

¶ 12    Officer Solis testified that, by the time she offered defendant the walk-and-turn test, which he refused, there were at least four officers present in the vicinity, in addition to herself and her partner. Defendant did not follow her directions for the one-leg stand test, although he appeared to be listening. Officer Solis acknowledged that the ability to perform the one-leg stand test can be affected by a person's weight. The first time that defendant attempted to do the test, he had his foot up for about 10 seconds; the second time, for about 9 seconds. Officer Solis did a "plain view" search of the vehicle and did not observe any open alcohol in the vehicle. Officer Solis acknowledged that there was a section on her report for the one-leg stand test, there was a box to check if the person swayed, and the box was not checked.

¶ 13    After the conclusion of Officer Solis's testimony, the State introduced an abstract from the Secretary of State for defendant. The abstract showed that defendant was issued a driver's

license on August 14, 2018, which was after the date of this incident. The State rested, and the defense made a motion for a directed verdict which was denied, and the defense rested.

¶ 14    During the parties' closing arguments to the court, both sides made arguments about what the video showed. For example, defense counsel argued that defendant was dazed when he was woken up, but that "you see as time goes by, he is understanding what's going on." Defense counsel argued: "I didn't see the officer lift her leg up when she was explaining that one-legged test." Again, apparently relying on the tape, counsel argued that his client was "understandable" and that his speech was "not slurred."

¶ 15    The trial court began its ruling by describing the evidence in the case and finding the sole witness credible:

> "THE COURT: In this case I listened closely to the evidence, and I watched the video closely, listened to the testimony of Officer Solis, the sole witness in this case. She testified credibly."

After finding the sole witness credible, the court observed that "[a]ctual physical control was not an issue," and neither was the fact that defendant's driving privileges were suspended. The court noted that defendant's car was parked almost in the middle of the street in front of a yellow blinking light at 1:30 a.m., that he was asleep at the wheel of a car that was still running, that he admitted to consuming four drinks, and that there was "some sway" as defendant walked to the front of the car. With respect to the sway, the court stated, "it is like the famous Supreme Court case, you know it when you see it." The court found there was "some issue with his gait."

¶ 16    However, the trial court discounted the HGN test, finding that it was "much adieu about nothing." The court did find that defendant did not follow instructions very well. With

the one-leg stand test, the court noted that the video showed that he put his foot down after five seconds, then picked it back up, and continued to count but skipped a number. The court found that defendant stopped the test himself and restarted the test himself and decided to start counting over. Based on all the evidence, the court found that defendant was proved guilty beyond a reasonable doubt of both counts.

¶ 17     After the trial on September 8, 2022, defendant filed a motion on October 5, 2022, for a new trial. The parties returned to court on October 21, 2022, when defendant filed a motion to substitute counsel, which was granted. Also, on October 21, 2022, the presentence investigation report was filed, and it reflected that defendant had two prior misdemeanor convictions, both related to driving: (1) negligent driving on August 6, 2015, and (2) driving under the influence of alcohol "Bac. O8" on January 27, 2017. The instant offense occurred on August 10, 2018.

¶ 18     On November 7, 2022, new counsel filed a supplemental motion for a new trial, which argued, among other things, that trial counsel was ineffective for failing to investigate defendant's postarrest diagnosis of a medical condition, namely hypothyroidism. Defendant contended that the medical condition could explain the observations made by the arresting officer that were instead attributed to alcohol. On February 6, 2023, the trial court stated that it was reopening the case because the court did not previously ask defendant whether he wanted to testify. The court asked, and defendant stated on the record that he understood his rights and did not want to testify. The parties then proceeded to consideration of defendant's motion for a new trial, which the defense declined to argue. With respect to the motion, the trial court found that defendant was "guilty of the offense and I don't think it was a close call" and denied the motion.

¶ 19       At sentencing, defendant submitted a letter of remorse for the court's consideration, in which he explained that his "past coping mechanisms were to turn inward and begin self-medicating." However, "[t]hrough the assistance of regular counseling and the creation of a strong support network," he had learned to manage his struggles. Now that he was in a position to aid his sister with her health issues, he had "found renewed purposed in [his] sobriety." The trial court then sentenced defendant for the instant felony offense to two years of probation with treatment. On appeal, defendant raises no challenge to his sentence. On March 7, 2023, defendant filed a timely notice of appeal, and this appeal followed.

¶ 20                                        ANALYSIS

¶ 21       Defendant's first claim on appeal is that "the State relied on Body Worn Camera footage that was published and relied on by the Court [but] never introduced or moved into evidence, and counsel's failure to object to this improper consideration of unadmitted evidence was ineffective."

¶ 22       As defendant notes in his appellate brief, when a trial court is the trier of fact, a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion. *People v. Smart*, 2025 IL 130127, ¶ 94. This presumption may be rebutted only where the record affirmatively shows the contrary. *Smart*, 2025 IL 130127, ¶ 94. We can find no such affirmative showing here, because our examination of the record reveals that defendant's argument relies on an erroneous factual premise.

¶ 23       Contrary to defendant's argument on appeal, the body-worn camera footage was admitted into evidence, with no objection by counsel, who then utilized this evidence in his closing argument. Further evidence that the footage was admitted is as follows: (1) where the

ASA moved for permission to strike the words "for identification from the exhibit and to publish"; (2) where the trial court asked defense counsel if he had any objection and counsel indicated that he had none; (3) where the trial court then ruled that "[t]here being no objection, the words 'for identification' are stricken"; and (4) where the trial court expressly stated that the exhibit was "in" and could now be published. See *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 73 (although the trial court did not use the word "admitted," admission of the exhibit was implied when the trial court asked defense counsel if he had any objection to its admission and he replied that he had none).

¶ 24    Defendant's second claim on appeal is that "[t]he evidence against [defendant] was insufficient and did not rise to the level of guilt beyond a reasonable doubt." When reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine, after viewing the evidence in the light most favorable to the State, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *Cline*, 2022 IL 126383, ¶ 25. A reviewing court will not reverse the fact finder's judgment unless the finding was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Cline*, 2022 IL 126383, ¶ 25.

¶ 25    For a charge of driving under the influence of alcohol, the State must prove that the defendant was "in actual physical control of any vehicle" while "under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2024). For the aggravated portion of the charge, the State had to prove that defendant was driving under the influence of alcohol while his driving

privileges were revoked or suspended or while he did not possess a driver's license. 625 ILCS 5/11-501(d)(1)(G), (H) (West 2024).

¶ 26    In the case at bar, what strikes this reviewing court is how few issues are disputed on appeal. Defendant did not dispute at trial and does not dispute on appeal (1) the lack of a valid driver's license; (2) the consumption of alcohol, having readily admitted the consumption of four drinks to the arresting officer; and (3) his physical control of the vehicle.

¶ 27    Therefore, we will focus on the "under the influence of alcohol" element of the statute. A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think or act with ordinary care. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20. Being under the influence is a question for the trier of fact to resolve after assessing the credibility of the witnesses and the sufficiency of the evidence. *Morris*, 2014 IL App (1st) 130152, ¶ 20. The State must prove that defendant was under the influence to a degree that he could not drive safely. *Morris*, 2014 IL App (1st) 130152, ¶ 20. Circumstantial evidence alone may be sufficient to prove a person under the influence. *Morris*, 2014 IL App (1st) 130152, ¶ 20. When the arresting officer provides credible testimony—as the trial court found in this case—scientific proof is unnecessary. *Morris*, 2014 IL App (1st) 130152, ¶ 20. Further, a defendant's refusal to submit to chemical testing may be considered circumstantial evidence of a defendant's consciousness of guilt. *Morris*, 2014 IL App (1st) 130152, ¶ 20.

¶ 28    Defendant argues that there was insufficient evidence of his being under the influence of alcohol and that the officers and the trial court failed to rule out other possible causes for defendant's impairment. First, we find that this record provides overwhelming evidence that defendant was under the influence. The evidence included (1) Officer Solis's testimony of

defendant being slumped in the driver's seat of a car stopped almost in the middle of the street, "with his foot on the pedal at a yellow yield light when it is one o'clock in the morning and no stopped traffic," the smell of alcohol emanating from inside his car, his inability to follow directions, and the "sway" in his gait as he walked to the front of the car; (2) the video; (3) his admission to having consumed four drinks; and (4) his performance on the field sobriety tests. See *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 38 (the defendant's admitted consumption of alcohol, the odor of alcohol, and the failure of all three field sobriety tests were sufficient evidence of being under the influence).

¶ 29　　While defendant argues that there was only a small amount of sway, the court found that there was definitely "some sway" as defendant walked to the front of the car and that there was "some issue with his gait." The court noted that "it is like the famous Supreme Court case, you know it when you see it." The trial court appears to be referring here to a famous comment by Justice Stewart who said, regarding obscenity, "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). However, as we noted in the paragraph above, defendant's gait was just one of the factors indicating that defendant was under the influence of alcohol in this case.

¶ 30　　As to the cause of his apparent impairment, defendant cites no authority for the proposition that, once (1) the driver admits alcohol consumption and (2) impairment is shown, the State must *sua sponte* disprove other potential causes of impairment that are not named or alleged. On appeal, defendant argues that the impairment could have been caused by any number of medical conditions, including defendant's subsequently diagnosed thyroid condition. However, on appeal, when we consider a defendant's challenge to the sufficiency of the evidence at trial, we are required to view the evidence in the light most favorable to the

State. *Cline*, 2022 IL 126383, ¶ 25. The question we ask now is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cline*, 2022 IL 126383, ¶ 25. To answer this question, we draw all reasonable inferences from the evidence in favor of the prosecution. *Cline*, 2022 IL 126383, ¶ 25. In the case at bar, with the overwhelming evidence of impairment (*supra* ¶ 28), defendant's admitted consumption of four drinks, the smell of alcohol emanating from the vehicle, and the conceded lack of a medical defense alleged at trial, we cannot find that the trial court was irrational in finding that the defendant was in fact under the influence of alcohol.

¶ 31                                CONCLUSION

¶ 32        For the foregoing reasons, we do not find persuasive defendant's arguments that an exhibit was not admitted into evidence or that there was insufficient evidence to convict. Our review of the record establishes that the exhibit at issue was, in fact, admitted and that the evidence of guilt was overwhelming.

¶ 33        Affirmed.

*People v. Lanigan*, 2026 IL App (1st) 230538

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-12771; the Hon. Michael J. Hood, Judge, presiding. |
| **Attorneys for Appellant:** | Anthony W. Hill, of Law Offices of Anthony W. Hill, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Matthew Connors, and Beth Pfeiffer Burns, Assistant State's Attorneys, of counsel), for the People. |